## STATE vs. LEWIS.

Where one of the counts in an indictment, otherwise in due form, charged that the defendant " did suffer games at cards to be played for gain, by means of cards, then and there used as a gaming device, in his house, &c.;" and another count, otherwise in due form, charged that the defendant " did suffer the games of eucher and poker at cards, and with and by means of cards, then and there used as a gaming device, to be played for gain in his house, &c.:"   *Held*, that such counts were good, under section 4 of chapter 117 of the General Laws of 1858.

Chapter 117, Gen. Laws of 1858, examined and construed.

REPORTED from the Circuit Court for *Dodge* County, for the opinion of this Court.

The defendant was indicted in the circuit court for Dodge county, in September, 1859, for permitting gaming with cards for gain upon his premises.   There were three counts in the indictment, of which only the first and second need be stated here.   The first, with specification of time and place,

charges that the defendant " did suffer games at cards to be played for gain, by means of cards then and there used as a gaming device, in his house and erection, &c." The second charges, with like specification of time and place, that the said *David Lewis* " did suffer the games of eucher and poker at cards, and with and by means of cards, then and there used as a gaming device, to be played for gain in his house, &c."

*June Term, 1860.*

STATE v. LEWIS.

Before the empannelling of the jury for the trial of the cause, the defendants' counsel moved the court to strike out or quash the first two counts in the indictment, for the reason that said counts were insufficient and did not charge a crime; which motion was denied by the court, and the defendant excepted. A jury was empannelled, and upon trial the defendant was found guilty under the first and second counts. His counsel moved the court in arrest of judgment, upon the same grounds that were assigned for the motion to quash the first and second counts. Motion denied. The defendant thereupon entered into a recognizance, with surety, to appear before the supreme court at its next term, &c., and the circuit judge reported to the supreme court the following questions of law arising in said cause : 1st. Whether the two first counts in the indictment were good, and whether a conviction under them would be legal ? 2. Whether the indictment was properly found under section 4 of chapter 169 of the Revised Statutes? [Chap. 117, General Laws of 1858, annexed to chap. 169, R. S.]

*The Attorney-General*, for the state.

*C. Billinghurst*, for the defendant, contended, that the two counts under which the conviction was had, were bad in this, that they did not allege cards to be a *gaming device or machine*, but merely that they were *used* as a gaming device. 2. That cards are not a gambling device within the meaning of the statute; that section four relates back to section one, and is designed to punish the keeper of the house for permitting games to be played for gain upon the devices referred to in section one; and that section five provides for the punishment of a *lower grade* of gambling with cards, dice, &c.

June Term,
1860.

STATE
v.
LEWIS.

October 15.

*By the Court,* PAINE, J.   The defendant was indicted under sec. 4, chap. 117, Gen. Laws of 1858 (R. S., p. 970), for permitting games of cards to be played for gain upon his premises.   There are several counts which allege that the defendant suffered games at cards "to be played by means of cards, then and there *used* as a gaming device," &c.   Sec. 4 punishes any one who allows any game or games to be played for gain upon his premises, "by means of any *gaming device* or machine of any denomination whatever," &c.   The ob·jection to the indictment is, that it does not aver that cards were a gaming device, but only that they were *used* as such.   In support of this objection it was contended that the several sections of this chapter establish two grades of gambling; one that of gambling by means of some gaming device, the other that of gambling by means of something which is not a gaming device.   And, of course, as a part of the argument, it was urged that the words, "a gaming device," as used in the statute, meant only a device designed exclusively for the purposes of gambling.   If this argument is correct, then, although cards may be used for the purpose of gambling, yet not being designed exclusively for such use, they would not be "a gaming device" within the meaning of the law, and consequently an averment that they were used as such would be insufficient in an indictment under sec. 4.   But on a careful examination of the provisions of the act, we are of the opinion that it divides gambling into two classes, not, however, gambling by means of a gaming device, and gambling without such device, but into gambling by means of a gaming device designed entirely for purposes of gambling, and gambling by means of any other device adapted to the playing of games, but not intended solely for gambling.   The statute, therefore, makes not only two kinds of gambling, but two kinds of gaming devices, those designed entirely for gambling, and those not so designed, but which may be used therefor.   This seems to us to result from a close inspection of the several sections.   Sec. 1 punishes any person who shall "set up or keep any table or gambling device."   The word gambling here necessarily includes the idea of playing for

gain, and that this section refers only to a device designed for that purpose, appears conclusively from the subsequent language. For it specifies a "faro bank, roulette, equality, or any kind of gambling table or device, adapted, devised or designed for the purpose of playing any game of chance *for money* or *property*," &c. Sec. 2 punishes any one who shall bet or play at or upon any gaming table, bank or device prohibited by sec. 1. It is to be observed here that it does not say who shall play for gain, evidently assuming that games at the tables or devices mentioned in the first section are played only for gain. Then sec. 3 punishes any one who shall suffer to be set up or used on his premises for the purpose of gambling, any of the tables or devices mentioned in the preceding sections. Then comes section 4., which the counsel for the defendant contends relates back to sec. 1. But we are unable to see how that construction can be sustained. For if it does, then the section would seem to be entirely unnecessary, for the offense of suffering any gambling by means of the devices mentioned in sec. 1 was fully provided for by sec. 3. The legislature would not have enacted sec. 4 without intending to provide for something not already provided for. Our view of it is this. With sec. 3 the legislature finished the offenses relating to the first class of gaming devices, those used for gambling only. With section 4 they commenced the second class, that is, relating to gambling with devices adapted to that purpose, but not designed exclusively therefor. Its language seems clearly to indicate this. It punishes any person who suffers any game or games *whatsoever* to be played *for gain* "upon his premises by means of any gaming device or machine of *any denomination or name whatever*." This plainly implies that by means of the gaming devices intended by this section, games may be played without being played "for gain." And it is the suffering them to be played for gain, which constitutes the offense. If this referred only to the devices mentioned in section 1, it would not have used this language, but would have assumed that the game could be played only for gain. Again, there is a marked difference between the language descriptive of the device, used in this section, and that in sec-

tion 1. In the latter it is specific and restricted, naming certain kinds of gambling tables, and then referring only to such other devices as are devised and designed for the purpose of playing games of chance for money or property. Sec. 4, however, intending to punish the suffering of games of chance to be played for gain by any means adapted to that end, uses the most general and comprehensive language in mentioning the device. It includes all "games whatsoever" played "by means of any gaming device or machine of any denomination whatever." This view is further strengthened by reference to the difference between the punishment prescribed by section 3, and that prescribed by section 4. In the former, where the offense is the suffering of gambling by means of devices designed solely for that purpose, the punishment is by fine not less than $200, nor more than $500, or by imprisonment, or both. While in section 4, where the offense is suffering gambling by means of devices not designed exclusively for that purpose, the fine is not less than $50, nor more than $200, with no imprisonment except on default of payment. The offense in sec. 4 was evidently considered of a lesser grade, and merely because it suffered gambling by a different kind of gaming device. We are, therefore, of the opinion that cards were, in fact, a gaming device, within the meaning of section 4. Still, an averment that they were such might be necessary, unless the statute itself fixes upon them that character, making such an averment unnecessary. And we think it does. Sec. 5 was evidently intended to punish the doing of those things, which section 4 punished the permitting to be done. And this section expressly names cards and dice as being devices adapted to the playing of games of chance. The statute itself, therefore, fixes upon them that character, and we think that this section may be looked at to see whether the law itself has expressly recognized any particular device as a gaming device within its meaning, so as to make an allegation that that device was used sufficient.

It follows, therefore, that the indictment was good. And this seems to us to result necessarily from the position of the counsel for the defendant that the statute establishes two

kinds of gambling. For if that is true, there must be two kinds of gambling devices, else one kind of gamblers must gamble without any gaming device at all. It seems clear to us that the real distinction recognized by the statute is between gaming or permitting gaming with devices designed entirely for playing for money or gain, and gaming or permitting it with devices that may be so used, but which are designed and adapted also to playing for amusement only. We think upon this distinction the entire statute is capable of a consistent and reasonable construction, and that sec. 16, which provides for the seizure of any "gaming table or gambling device," and perhaps some other provisions using similar language, would be held to relate to the devices of the first class, designed for gambling only.

We answer the questions certified to us by the circuit judge, in the affirmative, that the first two counts in the indictment were good, and the conviction under them legal.