VINTON G. HARBAUGH
*v.*
THE PEOPLE OF THE STATE OF ILLINOIS.

CRIMINAL LAW—*keeping a common gaming house—what constitutes.* The keeping of a billiard saloon, where persons assemble to play the game of billiards for amusement, even though they bet upon the game so far as to determine which of the contesting parties shall pay for the use of the tables, does not render the place a "common gaming house" within the meaning of the one hundred and twenty-ninth section of the Criminal Code.

WRIT OF ERROR to the Circuit Court of Warren county; the Hon. JOHN S. THOMPSON, Judge, presiding.

The opinion of the court contains a statement of the case.

Mr. J. H. STEWART, for the plaintiff in error.

Mr. C. BLANCHARD, State's Attorney, for the people.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

This was an indictment against plaintiff in error for keeping a common gaming house for his gain and profit. The prosecution is under the one hundred and twenty-ninth section of chapter entitled Criminal Jurisprudence, which declares that, if any person shall, for his profit or gain, keep, have or maintain a common gaming house, table or room, or in any house or place occupied by him or her, procure or permit any persons to frequent or come together to play for money or other valuable things at any game, every offender, on conviction, shall be fined not exceeding one hundred dollars, or imprisoned not exceeding six months. The indictment charges that, for his gain and profit, plaintiff in error unlawfully and willfully permitted and procured divers persons to frequent and come together to play at a game with billiards for money, etc. A trial was had by the court and a jury, resulting in a verdict of guilty. A motion for a new trial was entered, which was overruled by the court, and a fine of twenty-five dollars imposed.

It appears that plaintiff in error was the proprietor of a billiard saloon, and that different persons played billiards on his billiard tables, and that it was the custom for the loser to pay twenty or twenty-five cents for the use of the table for each game that was played, and that plaintiff in error was frequently present and received the money so paid; that the persons using the tables frequently played to see who should pay for their use. But the witnesses did not know of any rule or regulation adopted by plaintiff in error on the subject.

Does this evidence bring this case within the statute? We think not. The manifest design of the enactment was to prevent the coming of persons together for the purpose of gaming for profit. It was not to prevent persons from playing games simply for amusement, where there was nothing lost; nothing lost or won. Such a construction, we think, would not be according to the evident intention of the legislature. The act was intended to suppress and prevent the vice of gambling, and not the suppression of playing games alone for amusement. In this case we can see nothing more than simply keeping billiard

tables for amusement and exercise of persons desiring to use them for that purpose. It does not appear that they were kept for the purposes of gaming for money. Although persons using the tables may have played for the purpose of determining who should pay the trifling sum for the use of the tables, we do not think that rendered it a common gaming house, or that his permitting them to come together and play in that manner rendered the keeper liable under the statute; that any effort to evade the statute by permitting parties to play for stakes, or where sums were bet for the gain of the parties playing, would render the keeper of such a house liable, we entertain no doubt, but, in this case, we see no evidence that such was the design.

The judgment of the court below must be reversed and the cause remanded.

*Judgment reversed.*