## THE STATE v. BOOK.

1. **Criminal Law**: BILLIARD PLAYING: GAMBLING. Where parties engage in playing billiards with the understanding that the loser shall pay for the use of the billiard table, the owner of the table is guilty, under the statute, of the offense of keeping a house resorted to for the purpose of gambling.

2. **Instruction**: CRIMINAL LAW: EVIDENCE. An instruction directing that, if the jury found the parties who played upon billiard tables in his place of business did so with the understanding that the loser should pay for the use of the same, with defendant's knowledge, they should find him guilty of keeping a gambling house, was *held* not subject to the objection that it directed the jury respecting the force and effect of the evidence.

*Appeal from Shelby District Court.*

TUESDAY, OCTOBER 26.

At the August term, 1874, the grand jury presented the following indictment against the defendant:

"The Grand Jury, in the county of Shelby, in the name and by the authority of the State of Iowa, accuse Peter Book of the crime of keeping a gambling house, committed as follows:

For that the said Peter Book, on the first day of January, in the year of our Lord one thousand eight hundred and seventy-four, in the county aforesaid, and on divers other days between the first day of January, 1874, and the finding of this

indictment, kept, used, managed, and controlled a building, erection and place, resorted to by divers persons for the purpose of gambling at games of pin pool, cards, dice, and other games, for money, beer, cigars and other things of value, and the said Peter Book, within the building erection and place aforesaid, then and there suffered and permitted persons to play at games of pin pool, cards, dice, and other games, for money, beer, cigars, and other things of value, contrary to the statute," etc.

The defendant pleaded not guilty, and on a trial to a jury was convicted and adjudged to pay a fine of $50.00 and costs, from which judgment he appeals.

*Clinton, Hart & Brewer*, for appellant.

*M. E. Cutts, Attorney General*, for the State.

MILLER, CH. J.—The evidence shows that the defendant kept a place, as charged in the indictment, where persons resorted for the purpose of playing games of billiards, pin pool, etc., and where the defendant also kept cigars and drinks for sale; that it was the custom or habit of persons resorting to this place to play billiards and pin pool, "and the losing party to pay for the game;" the price of pin pool was five cents a cue, and billiards twenty cents a game. Sometimes, too, the man that got beat would treat. The evidence also leaves no doubt of the fact that the defendant knew that games of billiards and pin pool were played in the manner the evidence shows; in other words, that it was usual, in fact universal, for them to play those games with the agreement or understanding that the loser should pay for the games, and that they were in fact so played.

I. The court, among other things, charged the jury that if they found the above enumerated facts they would be authorized to find the defendant guilty under the indictment.

It is urged by counsel for appellant that these facts do not constitute the crime charged in the indictment. In other words, that playing the game of "pin pool" with the agreement that the losing party shall pay for the game, and he does so

in fact, is not gambling, and, therefore, to suffer such playing in a house or place under the control or care of the defendant does not constitute the crime charged.

The statute provides that to " play at any game for any sum of money or other property of any value " is gambling. (Code, section 4028.) Now, it is clearly shown and not disputed that the defendant kept certain tables on which divers persons were in the habit of playing at what is called the game of " pin pool." That this play is a " *game* " there is no dispute, and there is no controversy about the fact that for the use of the tables and other instruments of the game, the defendant charged and required the players to pay a certain sum of money for each cue (whatever that is). When, therefore, two or more persons played this game they became jointly or severally bound to pay the sum or sums of money chargeable therefor. It is plain that if they play the game or games in order to determine which of the players shall pay the entire sum or sums which they would be jointly or severally bound to pay, they play for the sum each one would be bound to pay, and it does not change the matter that they play the game in advance of paying therefor. The principle is the same as if the money had been staked or put up before the game was played. It is gambling in the one case as well as in the other. Nor is it any less gambling that the sum of money played for is small. To " play at *any* game for *any* sum of money," however small, comes within the statute.

<span style="margin-left:2em">1. CRIMINAL law: playing billiards : gambling.</span>

This view is sustained by *The State v. Leighton*, 3 Foster (N. H.), 167, and *Ward v. The State of Ohio*, 17 Ohio St., 32, both cases being precisely in point. In the former the learned judge delivering the opinion of the court says: "The defendants made a profit from the use of the billiard tables; for the 'hire' of them they were paid a shilling a game. The persons who resorted there played for the hire. In substance they played for a shilling a game. The loser paid and the winner received the sum. By an understanding among the players, the money was to be applied towards defraying the expenses of the tables; but still it was money won at play and

upon the chance of the play." The same doctrine is held also in the case last cited.

In *Harbaugh v. The People, etc.*, 40 Ill., 294, and *Blewitt v. The State of Mississippi*, 34 Miss., 606, a contrary doctrine is held under the statutes of those states. Under our statute, we deem the former the correct view, and that any different construction would not be warranted.

II. After the jury had been out for some time they came into court and submitted to the court, in writing, the following question:

"JUDGE REED:—Will you state for our information, if, in taking the surrounding circumstances, such as Book's presence while the games were being played, and receiving the money, we should conclude that he knew how the games were being played and played unlawfully, should we find him guilty in connection with this evidence.

H. M. COOK, *Foreman*."

Which the court answered as follows:

"If you find from the evidence, that parties who played on defendant's billiard table, in his place of business, did so with the understanding that the loser should pay to defendant the amount charged all the members of the party for the use of the table, and that the defendant knew that they were playing under such arrangement, and permitted them so to play, you should find the defendant guilty."

2. INSTRUCTION: criminal law: evidence.

The objection urged to this instruction is, that it directs the jury as to the force or effect of the evidence. We do not so understand it. It simply tells the jury that if "from the evidence" they find certain *facts*, then they should find the defendant guilty. There was no error in the instruction in this respect, nor in any other, as we have already seen.

The judgment of the District Court will be

AFFIRMED.