No. 9066.

## HAMILTON *v.* THE STATE.

CRIMINAL LAW.—*Keeping House for Gaming.*—"*A House*" *Equivalent to* "*His House.*"—*Indictment.*—It is not a valid objection to an indictment for keeping a house for gaming, etc., under the first clause of section 29, 2 R. S. 1876, p. 469, that the defendant is charged with keeping, not *his* house, but *a* house.

SAME.—"*Hire of Table*" *Thing of Value.*—*Statute Construed.*—Suffering gaming for "the hire of the table" is within the purview of section 29 of the statute, *supra*, and constitutes a public offence. "The hire of a table" is a thing of value, to be risked on a game of chance. WORDEN, J., dissents.

SAME.—*Evidence.*—*Defendant's Knowledge.*—On trial of an indictment for keeping a house for gaming, evidence that, although the defendant's saloon, bar and tables were in charge of his clerk or bartender, he was frequently present, inattentive, sitting behind the stove in a remote part of the saloon, reading newspapers, and that his tables had been so used for gaming, two years, justified the jury's inference that he knew how the business of his saloon was being conducted, and a finding that he suffered the same to be used as charged.

SAME.—*Instruction.*—*Money or Other Things of Value.*—*Chips and Checks.*—An instruction, which correctly defined a wager of the money-rent of the table as gaming, was not erroneous because it added, "or * * for a wager of chips, checks, or other things of value;" but the question of the value of the chips and checks was thereby left to the jury.

From the Wabash Circuit Court.

*A. Hess, A. Taylor* and *J. U. Pettit*, for appellant.

*D. P. Baldwin*, Attorney General, and *M. Good*, Prosecuting Attorney, for the State.

NEWCOMB, C.—The appellant was indicted in two counts, and convicted on a jury trial, for violation of the first clause of section 29 of the act defining misdemeanors, which provides that "If any person shall keep, or suffer his or her building, arbor, booth, shed, or tenement, to be used for gaming, * * * he shall be fined not less than fifty, nor more than five hundred dollars."

The first count of the indictment charged the defendant with keeping a certain house and room to be used, and

suffered the same to be used, for gaming, and did then and there unlawfully allow divers persons (naming them), and other persons, to the grand jury unknown, to play the games of billiards, pool and corporal, in said house, for money, and for "the hire of the table" on which said games were then and there played, which said hire was of the value of five cents.

The second count was in the same form, but varied the charge, by stating that the game of corporal was played by the parties named and other parties to the grand jurors unknow, on a billiard table then and there kept by the defendant in said house, for certain "checks," then and there of the value of five cents each, a more particular description of which was unknown to the grand jury.

Motions were made to quash each count of the indictment, for a new trial and in arrest of judgment, all of which were overruled, and the defendant excepted.

It is objected to each count, that it does not charge in the language of the statute, that the defendant kept *his* house, etc., but *a* house. This is not a valid objection. *The State* v. *Hubbard*, 3 Ind. 530.

The appellant earnestly insists that the indictment does not state a public offence, and that the evidence was not sufficient to justify a conviction, on the ground that suffering parties to play upon a billiard table, where nothing is risked but the hire of the table, does not come within the purview of the statute. For authority in support of his position the appellant refers us to *Carr* v. *The State*, 50 Ind. 178, *Sumner* v. *The State*, 74 Ind. 52, *The People* v. *Sergeant*, 8 Cowen, 139, and *Harbaugh* v. *The People*, 40 Ill. 294.

In *Carr* v. *The State, supra*, the court did not express an opinion upon this question, but reversed the judgment below on the express ground that the indictment did not allege that the hire of the table was of any value.

*Sumner* v. *The State, supra,* was a prosecution under sec. 74 of the misdemeanor act, and has no application to this case.

*The People* v. *Sergeant, supra,* was a prosecution at common law for maintaining a nuisance. The evidence was that the defendant kept a billiard table in his house, on which parties were allowed to play, "the loser of the rub paying for the use of the table." The defendant did not permit wagering on the result of the game, and allowed no noise to disturb the public. It was held that a house kept even for games of chance, conducted for mere recreation, was not an offence at common law, and was not a gaming house within the common law of nuisance ; and that paying for the table "by the rub" was not gaming, within the meaning of the law making a gambling house a nuisance.

This case was followed in *The State* v. *Hall,* 32 N. J. 158, which was also a common law prosecution for maintaining a nuisance. There is obviously a wide distinction between establishing a charge of keeping a public nuisance, and sustaining a charge under the special statute on which this indictment is founded.

*Harbaugh* v. *The People, supra,* was a prosecution under a statute similar to that under which the appellant was indicted, and, in that case, it was held that permitting the parties to play for the hire of the table did not render the defendant liable. In several other States the decisions are opposed to the cases above noticed. In *The State* v. *Records,* 4 Harrington (Del.) 554, which was an indictment at common law for suffering a game of chance to be played about the defendant's house, on which money was bet, it was held that, if the compensation for the use of a bowling alley was made to depend on the result of the game, and the inn-keeper permitted the game to be played, with a knowledge of such risk, it was a violation of the law. In *Ward* v. *The State,* 17 Ohio St. 32, it was de-

cided that "Where a party keeps a billiard table, and permits persons to play upon it, for twenty cents a game, to be paid by the loser of the game, he is guilty of keeping such table for gain, within the meaning of section 8 of the act of March 12, 1831, 'for the prevention of gaming,' * * although such keeper of the table does not permit the players, as between themselves, to bet, and neither they nor other persons do bet on the issue of the game or games, in any other manner than that the loser of the game should pay the twenty cents for the use of the table." To the same effect is the case of *The State* v. *Leighton*, 3 Fost. N. H. 167.

The decisions of this court have been in harmony with the cases last cited. In *Blanton* v. *The State*, 5 Blackf. 560, it was held that the keeper of a billiard table, though he did not play on it himself for money, nor suffer others to do so, yet, if, for a stipulated compensation per game, he allowed any persons to use it, he was liable under a statute which provided, among other things, that the keeper or exhibitor of a billiard table, for the purpose of winning or gaining money, or any other article or property of value, either directly or indirectly, should be fined, etc. *Mount* v. *The State*, 7 Ind. 654, was a prosecution against the accused for a violation of section 28 of the misdemeanor act, which provides that "Every person who shall, by playing or betting at or upon any game or wager, * * either lose or win any article of value, shall be fined," etc. The information charged that one Groff owned and kept a ten-pin alley for hire, and that Mount and one Miller hired of Groff the use of the alley to play one game of ten-pins, for which they agreed to pay him ten cents, and that, in pursuance of said hiring, Mount and Miller played said game, by which Mount won of Miller five cents, the half of the hire of said alley, by then and there unlawfully betting and wagering with him the said five cents on the result of the game. In the opinion delivered in the case, DAVISON, J., said: "It is insisted that

the information does not show a case within the statute. To constitute unlawful gaming, there must be a game played, and upon its result some article of value must be lost and won.   Here was such game, and the only point of inquiry is, was any article of value won by the defendant?   His liability to Groff was paid by Miller, because, in the event of being unsuccessful, he had stipulated to pay it.   This payment, though made to Groff, was for the use of the defendant, and the transaction was, in effect, the same as if the amount lost and won had been paid to the defendant instead of Groff, and he had received it from the defendant." It was also announced, in that case, that *The People* v. *Sergeant, supra*, was not an authority applicable to our statute, and could not be followed.

In *Crawford* v. *The State*, 33 Ind. 304, a conviction was sustained under this 29th section, when the proof was, that the players were charged twenty-five cents a game for the use of the billiard table, which was paid by the loser of the game.   No question was made that this was gaming, but the objection was to the sufficiency of the proof of guilty knowledge by the proprietor of the premises.

We think that sound reason supports the authorities that hold such playing as is charged in this case to be gaming. The manifest purpose of the Legislature, in its various enactments on the subject of gaming, has been to make unlawful all games of chance by which money or other articles of value may be lost or won, and the evil effects of risking small sums on the result of skill at billiards is less in degree only than the hazard of larger stakes at other games.   The weight of authority is also in favor of such construction of the statute under consideration.   Both counts of the indictment were good, and the motions to quash and in arrest of judgment, were correctly overruled.

It remains to consider the sufficiency of the evidence, and an instruction to the jury which was excepted to by the de-

fendant. Two witnesses testified for the State. No evidence was offered by the defendant. The principal points relied upon by the appellant, under the third assignment of errors, are, that playing for the hire of the table is not gaming, and that the evidence did not connect the defendant with the commission of the offence, or show knowledge on his part that his house was used as stated in the indictment. The first objection we have already considered. The evidence showed that the defendant was the proprietor of a saloon in North Manchester, Wabash county, which was in the charge of a clerk or bartender; that the defendant did not personally attend to the business of the saloon, but, during the day time, was usually engaged in running a tile manufactory and farm, out of town. Michael Sweeney testified that he had been in the defendant's saloon on an average of once a week for the past two years; that he had seen parties play billiards and pool in his saloon frequently during the last winter and fall; had seen the parties named in the indictment play billiards in said saloon; the loser of the game would pay for the use of the table, which was five cents for each player each game; after the game was played, the loser would step up to the bartender and pay for the game, and would receive a check for each person playing, which check was worth five cents at the bar; had seen other parties play there at different times, the loser generally paying the bartender for the checks; had seen the defendant in the saloon while games of pool and billiards were being played; he did not attend the bar; had nothing to do with waiting on customers; he generally took his seat behind the stove, near the north door, and seemed to be reading newspapers. When witness saw him, he paid no attention to the billiard tables, which were about forty feet from him, in the south part of the saloon. Never saw defendant back where the tables were and the playing was done, and he had not attended to the business of the saloon for over two years;

he was proprietor of the saloon, but the bartender attended to all the business. When witness saw the defendant in the saloon, it was generally in the evening; the bar and billiard tables were in the same room; in the game of billiards fifteen cents was charged when two played, and the loser paid the bartender the money, and no checks were given in this game; had frequently seen the game of billiards played in defendant's saloon when the loser paid for the game. The witness further stated that he did not know whether the defendant knew how the games were played and paid for, or not; that he was there often, and there was nothing to prevent him from knowing; he did not seem to be paying attention to it.

Charles Reed testified as follows: "I live in North Manchester, Wabash county, Indiana; the defendant runs a saloon in North Manchester; I have been in his saloon several times during the past year; he has a bartender there, and the defendant does not stay there near all the time; he works at his tile mill and on his farm most of the time; I have seen billiards, pool and corporal played in his saloon; the general rule was for the loser to pay for the game; I have seen (naming the persons charged in the indictment to have played, etc.,) play there when the loser paid for the game; when pool and corporal were played, the bartender issued checks, worth five cents each, and gave them to the loser, one for each player, when the loser paid for the game; I have seen a good many other persons play there at these games in the same way; the defendant seemed to pay no attention to what was going on in his saloon; I frequently saw him in there, but he was generally reading a newspaper at the north end of the room; the tables were in the south end; the stove was between the defendant, when I generally saw him, and the tables when the games were played."

From this evidence we think the jury might well infer that the defendant knew how the business of his saloon was

being conducted, and to find from the evidence that he suffered the same to be used for the purpose charged in the indictment. The evidence did not show an isolated case or two of gaming, or even a few cases, but that the billiard tables had been run in that way for two years ; and, although the defendant gave no personal attention to the tables or bar, he frequently was present while the playing was going on.

The instruction complained of was as follows : "The playing of billiards, pool or other games played upon a billiard table, when there is a wager of the money-rent of the table between the parties playing, or when the parties play such game for a wager of chips, checks or other things of value, in either case the playing of such game, for such wager, is gambling within the meaning of the law."

The criticism of appellant's counsel on this charge is that it was "a judicial declaration that checks and chips are things of value—a declaration the court had no right to make to the jury."

If this instruction bore the meaning given to it by appellant's counsel, it would be erroneous, as it was the province of the jury to determine from the evidence whether the checks and chips named were articles of value. But we do not so construe the instruction. The first branch of it informed the jury that a wager of the money-rent of the table was gaming. This was unobjectionable. The residue of the charge puts the hypothetical case of playing for any other articles of value, among which are named chips and checks. We think the question of value was left, by the instruction, to the jury, and that they would understand from it, that, in order to convict for allowing games to be played for "chips," they must find that such chips were things of value, for they were told that gaming consisted in playing for money or other things of value.

The judgment of the circuit court should be affirmed.

Vol. 75.—38

PER CURIAM.—It is therefore ordered, on the foregoing opinion, that the judgment below be, and it is hereby, in all things affirmed, at the costs of the appellant.

WORDEN, J., dissents from the proposition, that the playing named in the indictment, where nothing was risked but the hire of the table, was gaming within the meaning of the statute.