THE PEOPLE OF THE STATE OF NEW YORK EX REL. LIBBIE E. HEALEY v. HENRY P. FORBES AND OTHERS, COMMISSIONERS OF EXCISE OF THE TOWN OF CANTON, N. Y.

*A billiard table may be kept in a tavern, if not used for gambling — chapter 628 of 1857, section 7.*

Upon a hearing had upon the return to a writ of *certiorari*, issued to review the proceedings of a board of excise in annulling and revoking the license of the relator as an inn-keeper for suffering a billiard table to be kept in her hotel, it appeared that she kept a billiard table in the house on which persons played upon the terms that the loser should pay for the use of the table.

By section 7 of title 9 of chapter 20, part 1 of the Revised Statutes, the keeper of an inn is required to give a bond with the condition that during the time he shall keep such inn he will not keep any billiard table within the tavern. In section 7 of chapter 628 of 1857, the present excise law, the words "billiard table" are omitted.

*Held,* that as the statute of 1857 was a penal statute, the omission of those words signified that a billiard table might now be lawfully kept in a hotel if it was not used for gambling purposes.

That, as it appeared that the loser paid simply the amount that was due the proprietor for the use of the table and the winner took nothing, the provisions of the excise act, preventing her from keeping a gaming table, were not violated.

CERTIORARI issued at a Special Term held in Montgomery county on April 25, 1888, to Henry P. Forbes and others, as commissioners

of excise of the town of Canton, N. Y., to review the determination of said board of commissioners in the matter of revoking the license of the petitioner.

*Horace D. Ellsworth*, for the relator.

*Almoron Z. Squires*, for the respondents.

LEARNED, P. J.:

We think that the resolution, revoking the relator's license, although it was not delivered to her, was such an act of the board that she has the right to review it.

By the vote of the board, on motion of Mr. Forbes, it appears that the license was revoked because she suffered gambling in the house, " as we understand the law." The question, then, is fairly presented whether on the evidence she did suffer gambling in the house. The evidence, in brief, is that she kept a billiard table in the house on which persons played, upon the terms that the loser should pay for the use of the table. The game of billiards is one of skill, not of chance. It is a game for physical, though not violent, exercise. It is similar in its character to the game, lately so popular, of croquet; and not unlike in character to curling or base ball.

In *People* v. *Sergeant* (8 Cow., 139), it was decided that keeping a billiard table where the loser paid for the table was not gaming within the law which makes the house a nuisance. In *Hitchins* v. *People* (39 N. Y., 454), it does not appear what games were played. In an unreported case, the *People* v. *Commissioner of Excise* decided in November, 1887, it was held by Mr. Justice POTTER that such playing at billiards (the loser paying) was not a violation of the bond given by a hotel-keeper.

In *Tanner* v. *Trustees* (5 Hill, 121), however, it was held that a bowling alley kept for hire was a nuisance at common law. The learned justice who wrote the opinion cited many ancient cases, and spoke of the immorality of Charles the Second, but said that he himself had never seen a game of billiards. Nothing, therefore, was decided as to this game.

It further appears that under the old law, and for many years, the bond of a hotel-keeper was conditioned that he should not keep a.

billiard table or other gaming table. Under the present law the words billiard table are omitted, and the condition is that the licensee will not keep a gambling table. The respondents urge that the omission was made because it had been settled that a billiard table was a gambling table and need not be specified. It may quite as well be said that the omission was intended to indicate that a billiard table was not a gambling table. (Laws 1857, chap. 628, §7.)

The case of *People* v. *Cutler* (28 Hun, 465) was a conviction of defendant as a disorderly person, and the court held the evidence sufficient under Code of Criminal Procedure (§ 899, subs. 4, 7). We do not think that that decision is conclusive on the present question.

The truth is that the evils and the attraction of gambling arise where there is a large element of chance; and, in construing this statute, we may properly consider the evil aimed at. Our opinion is that the doctrine of *People* v. *Sergeant* and of *People* v. *Commissioner of Excise*, above cited, is correct, and that keeping a billiard table, even though the loser pays for the use, is not keeping a gambling table within the statute.

The order should be reversed.

LANDON, J.:

The statute now omits a billiard table; it formerly specified it. It is a penal statute, and the omission signifies that a billiard table may be lawfully kept, if not used for gambling. I do not think it safe to say that billiards are not a game of chance, but of skill. That depends, in part, upon whether the players are experts or not. The terms "scratch" or "fluke" are of the nomenclature of the chances of the game. Be that as it may, when the game is played upon a hired table, if the loser pays the hire, he simply pays what is due the proprietor; the winner takes nothing. If, directly or indirectly, anything else, as cigars or drinks or money, should be at stake, then a case of gambling would exist. I think the legislature must have had this distinction in view, and I, therefore, concur in the result.

INGALLS, J., concurred.

Order of board annulling license reversed.