## HOPKINS *v.* THE STATE.

Playing pool under an agreement among the players that the one losing the game shall pay for the use of the table is betting at a pool-table within the meaning of the Penal Code, § 401, providing that "If any person shall . . bet . . at any . . pool-table, he shall be guilty of a misdemeanor." The fact that the State imposes a specific tax on the keeper of a pool-table does not affect the question.

Argued March 20, — Decided March 25, 1905.

Indictment for misdemeanor. Before Judge Fite. Bartow superior court. January 24, 1905.

*W. M. Graham* and *W. I. Heyward,* for plaintiff in error.
*Sam. P. Maddox, solicitor-general,* contra.

FISH, P. J. Willis Hopkins, Mose Reed, and Creek Kincaid were indicted for playing and betting "together for money or other things of value at a pool-table." On the trial of Hopkins the witness introduced in behalf of the State testified : That he saw Hopkins and the other two defendants play several games of pool together, at the time and place charged in the indictment, "the price of each game being fifteen cents, the same being five cents a cue for each player using a cue. Under an agreement between the players, the one losing the game, that is the one putting the least number of balls in the pockets, was to pay for the game. Several games were played in this way, the losing party always paying for the game. The pool-table was run and owned by Henry Kay, but he was not playing." Hopkins was found guilty. His motion for a new trial being overruled, he excepted. The question whether playing a game such as billiards, pool, tenpins, etc., under an agreement among the players that the loser is to pay the rent or charge imposed by the keeper of the table or alley for its use, is gaming, has never been decided by this court. There is an irreconcilable conflict of authority among the courts of other States where this question has arisen. In State *v.* Records,

4 Harr. (Del.) 554, it was held to be betting where the players at tenpins risked only the price of the game.    In State *v.* Leighton, 3 Foster (N. H.), 167, the defendants were indicted for unlawfully keeping a gaming place "for money, hire, gain, and reward."    At the trial it appeared that it was contrary to the rules of the room to play for money, but that it was the general custom for the party defeated in a game to pay for the use of the table, for which the defendants charged a shilling per game.    It was held that this was a gaming for money.    The court said:    "The defendants, in this case, made a profit from the use of the billiard-tables, for the 'hire' of them, they were paid a shilling a game.    The persons who resorted there played for the hire.    In substance they played for a shilling a game.    The loser paid and the owner received the sum.    By an understanding among the players, the money won was to be applied towards defraying the expenses of the tables, but still it was money won at play, and upon the chance of the play, and not on any collateral matter."    In Mount *v.* State, 7 Ind. 654, the accused was charged with the violation of an act which provided that "Every person who shall, by playing or betting at or upon any game or wager whatever, either lose or win any article of value, shall be fined," etc.    The information charged that Groff owned and kept a tenpin alley for hire; that Mount and Miller hired of him the use of the alley to play one game of tenpins, for which they agreed to pay him ten cents; "and that, in pursuance of said hiring," Mount and Miller played a game, by which Mount won of Miller five cents, the half of the hire of the alley, by then and there unlawfully betting and wagering with him the five cents on the result of the game.    In the opinion in the case Davison, J., said:    "It is insisted that the information does not show a case within the statute.    To constitute unlawful gaming, there must be a game played, and upon its result some article of value must be lost and won.    Here was such game; and the only point of inquiry is, was any article of value won by the defendant?    His liability to Groff was paid by Miller, because, in the event of being unsuccessful, he had stipulated to pay it.    This payment, though made to Groff, was for the use of the defendant; and the transaction was, in effect, the same as if the amount lost and won had been paid to the defendant instead of Groff, and he had received it from the defendant."    In Hamilton *v.* State, 75

Ind. 586, it was held that suffering parties to play upon a billiard-table, where nothing is risked but the hire of the table, came within the purview of a statute providing that any person who should keep or suffer his building, etc., to be used for gaming should be fined, etc. In Alexander v. State, 99 Ind. 450, it was held: "A charge in an indictment, that the defendant played a game of pool upon a pool-table with another person, and thereby won money from him, is sustained by proof that the parties played under an arrangement that the losing party should pay the owner of the table the amount charged for the use of it, and that the defendant won the games, and the other party paid for them." The court said: "To whom the money was directly paid was not so material as the fact that the game decided who should pay it, and who should profit by the payment. If appellant had lost the games, he would have lost the amount charged for them. He won the games, and thereby won the amount charged for them, or at least one half of that amount. At the end of each game he was ten cents better off than if he had lost the game, and he was five cents better off than he would have been, if, without any chance or hazard, each party had paid for his cue. That he did not actually handle the money, it seems to us, can make no difference." To the same effect, see Ward v. State, 17 Ohio St. 32; State v. Book, 41 Iowa, 550; State v. Miller, 53 Iowa, 154; Tuttle v. State, 1 Tex. App. 364; State v. Howery, 41 Tex. 506; Hall v. State (Tex.), 34 S. W. 122; Mayo v. State (Tex.), 82 S. W. 515; Murphy v. Rogers, 151 Mass. 118.

Cases in which rulings to the contrary have been made are: People v. Sergeant, 8 Cowen, 139; Harbaugh v. People, 40 Ill. 294; Blewett v. State, 34 Miss. 606; People v. Forbes. 52 Hun, 30; State v. Hall, 32 N. J. L. 165; State v. Quaid, 43 La. Ann. 1076. These rulings were put mainly on the ground that to constitute gaming, or betting, one or the other of the parties must expect to profit by the game, and that in playing at billiards, pool, etc., the loser to pay the table hire, neither of the parties expected a profit. Section 401 of the Penal Code of this State declares: "If any person shall play and bet for money, or other thing of value, at any game played with cards, dice, or balls; or shall play and bet for money, or other thing of value, at any table of whatever name, kind, or description, for gaming; or shall bet at

any game of nine-pins, or any other number of pins, or at any billiard or pooltable, he shall be guilty of a misdemeanor." The question, therefore, is, did the evidence in the case under consideration show that the accused bet at a pool-table, that is, that he laid a wager, or staked money or anything of value at such table? We are of the opinion that it did. He hazarded the payment of ten cents, for the other two players, to the keeper of the table, and took the chance of relieving himself of his own obligation to such keeper. It is uniformly held that playing games to determine which of the players shall pay for drinks, food, or cigars, etc. for the use of the players, is gaming. 14 Am. & Eng. Enc. L. 670, and cases cited. The use of the table for the purpose of amusement and recreation, when such use must be paid for, is as much a thing of value as the drinks, food, or cigars. The players enjoy the drinks, food, or cigars, and they enjoy the use of the table, cues, and balls. For each of these things money must be paid, and without the arrangement among the players, by which the loser of the game must pay for what they all enjoy, each player would have to pay for his own share thereof, unless some one made him a gift of the same. If three men were to play a game of pool to decide which one of them should pay for the hire of a horse and vehicle for the temporary use of the three, would not each of them be engaged in betting with the other two upon the result of the game? Would not the loser lose, and the winners win, something of value? We think so. The hire of the horse and the vehicle would be a thing of value wagered on the result of the game. And, under the circumstances disclosed by the evidence in this case, so was the hire of the pool-table for the use of the players, while they played a game thereon. If two men were to each owe the keeper of a pool or billiardtable one dollar, and were to play a game upon the table under an agreement that the loser should pay both debts, the effect would be the same as if each bet the other one dollar on the result of the game. We can see no difference in principle between such a case and one in which the playing of the game creates the debt, or debts, to the keeper of the table, which the players agree the loser of the game must pay. The evident purpose of the statute was to prohibit all forms of gambling with cards, dice, or balls, or at any table, of

whatever name, and the fact of the insignificance of the amount wagered is immaterial. As the accused introduced no evidence, and his statement was in substance the same as the testimony of the witness for the State, the verdict was demanded. The charge of the court excepted. to being, in effect, that if the jury believed the facts of the case to be as stated by the witness for the State, they should find the accused guilty, was in accordance with the law of the case. The fact that the State imposes a .tax upon every keeper of a pool-table does not affect the case. The licensing of a pool or billiard table, does not authorize betting at such table. In *Doon* v. *State, R. M. Charlton,* 1, it was held that " The fact that a tax is imposed upon a faro-table does not authorize the use of it for gaming."

*Judgment affirmed. All the Justices concur.*