## STATE v. SANDERS.

Opinion delivered June 1, 1908.

GAMING—KEEPING A GAMING TABLE.—Where a person keeps a billiard table, and permits others to play upon it for so much a game, to be paid by the loser of the game, he is within the prohibition of Kirby's Digest, § 1732, which prohibits any person from keeping a table at which any money may be won or lost.

Appeal from Sebastian Circuit Court; *Daniel Hon,* Judge; reversed.

STATEMENT BY THE COURT.

Sanders was indicted by the grand jury of the Fort Smith District of Sebastian County for exhibiting a gambling device, contrary to section 1732 of Kirby's Digest. He was tried before the court without a jury, upon the following agreed statement of facts:

"Kelley pool is a game played on an ordinary pool table with fifteen pool balls, numbered from 1 to 15, inclusively, the players using ordinary pool or billiard cues for driving the balls into pockets with a cue ball which is not numbered. Before the game is started each player is given a small ball on which is a number, all such balls supposed to be numbered from 1 to 15 inclusively, just the same as the pool balls. The object of the game is for the player to pocket the ball on the table which corresponds in number with the small ball which he holds in secret, until he pockets his ball. If he pockets such ball, he wins the game. If some other player pockets the ball with this number, he is "dead" and cannot win, and the only consolation which remains to him is to remain in the game with the prospect of killing some other person. Defendant has a license from the city of Fort Smith to run or operate a pool room in the city limits, and does run and operate pool tables as set forth above. And that Kelley pool is played on said tables at times, and that other pool is played, and the loser pays for the cues."

The court found the defendant not guilty. The State moved for a new trial, and upon its denial brought the case here.

*William F. Kirby,* Attorney General, and *A. A. McDonald,* Prosecuting Attorney, for appellant; *William H. Rector,* of counsel.

Persons playing Kelley pool are guilty of gaming, and the person who sets up and exhibits a device for same is guilty of exhibiting a gambling device. 99 Ind. 450; 36 Ark. 67-8; 43 *Id.* 77; 85 Mich. 296; 32 Tenn. (2 Swan.) 287; 69 Ky. 376; 80 Mass. (14 Gray) 26; *Ib.* 390; 53 Iowa, 154; 39 *Id.* 42; 75 Ind. 586; 27 Ark. 360; 28 Howard (N. Y.) 247; 151 Mass. 118; 39 Mo. 420; 49 Pac. 934.

HILL, C. J., (after stating the facts). The question to be determined is whether, under the facts, the game of Kelley Pool

is a game at which money or property may be won or lost; and, if so, if the table kept for it to be played on is a "gambling device" within the meaning of section 1732 of Kirby's Digest.

1. Similar games and similar statutes have been before the courts, and what has been said by them is pertinent here. In the case of *State* v. *Book,* 41 Ia. 550, it was said: "The defendant kept certain tables on which divers persons were in the habit of playing at what is called the game of 'pin pool.' That this play is a 'game' there is no dispute, and there is no controversy about the fact that for the use of the tables and other instruments of the game the defendant charged and required the players to pay a certain sum of money for each cue (whatever that is). When, therefore, two or more persons played this game, they became jointly or severally bound to pay the sum or sums of money chargeable therefor. It is plain that, if they play the game or games in order to determine which of the players shall pay the entire sum or sums which they would be jointly or severally bound to pay, they play for the sum each one would be bound to pay, and it does not change the matter that they play the game in advance of paying therefor. The principle is the same as if the money had been staked or put up before the game was played. It is gambling in the one case as well as in the other. Nor is it any less gambling that the sum of money played for is small. To 'play at any game for any sum of money,' however small, comes within the statute." This was followed by *State* v. *Miller,* 53 Ia. 154.

In *State* v. *Leighton,* 3 Foster (N. H.) 167, the court said: "The defendants in this case made a profit from the use of the billiard tables. For the 'hire' of them they were paid a shilling a game. The persons who resorted there played for the hire. In substance, they played for a shilling a game. The loser paid and the winner received the sum. By an understanding among the players, the money was to be applied towards defraying the expenses of the tables, but still it was money won at play, and upon the chance of the play."

"Where a party keeps a billiard table, and permits persons to play upon it for twenty cents a game, to be paid by the loser of the game, he is guilty of keeping such table for gain within the meaning of section 8 of the act of March 12, 1831, 'for the

prevention of gaming', although such keeper of the table does not permit the players, as between themselves, to bet, and neither they nor other persons do bet on the issue of the game or games, in any other manner than that the loser of the game should pay the twenty cents for the use of the table." *Ward* v. *State,* 17 Ohio St. 32. These cases were followed in *Hamilton* v. *State,* 75 Ind. 586; and the Missouri court reached the same conclusion in *State* v. *Jackson,* 39 Mo. 420. This is the general rule. See 20 Cyc. 889, and cases cited in note 1.

There are some decisions to the contrary: *People* v. *Forbes,* 52 Hun, 30; *People* v. *Sargeant,* 8 Cowen (N. Y.), 139. The great weight of authority and the sounder reasoning, however, declare such games to be within the gambling statutes.

2. Therefore, only the inquiry remains, whether the keeping of this pool table was the keeping of a gambling device within the meaning of section 1732 of Kirby's Digest.

This exact question was raised in Texas, and the court held that the keeping of such a table would not be keeping a gambling device unless the keeper of the table had knowledge, or might by reasonable diligence have known, that the table was used by the players for gaming purposes. *Smith* v. *State,* 12 S. W. 412.

It is apparent from the statement of facts here that it was a part of the game, understood by the proprietor as well as the players, that the loser was to pay the tolls of the participants of the game. This made it a gambling game, and implicated all parties concerned. A gambling device is an instrumentality for the playing of a game upon which money may be lost or won; and the instrumentality is not necessarily intended solely for gambling purposes. 14 Am. & Eng. Enc. Law, 684-5; 20 Cyc. 882-4.

Certain gambling devices cannot be used for any other purpose, and, when designed for that purpose alone, they may be destroyed under the "burning statutes." *Garland Nov. Co.* v. *State,* 71 Ark. 138. But there may be gambling devices that are no less such, although not always so used, but which, from their nature, may be used for other purposes. *State* v. *Lewis,* 12 Wis. 434.

Under a kindred statute, the Alabama court said: "The

statute is aimed at the *use* to which the table is appropriated. Any table used for gaming, without regard to its appliances or adaptation to any particular game, is included in the statute; and if the defendant had the possession or custody of the table, authority over its use, and supervised the gaming, he was the keeper, or interested or concerned in keeping it." *Bibb* v. *State,* 84 Ala. 13.

The pool table in question was adapted for games that were not within the statute, or for games within the statute, depending upon the use to which it was put. In this case it was put to a use contrary to the statute, and, being exhibited for that purpose and maintained for his profit by the defendant, he is within the statute.

Judgment reversed and cause remanded.