PORTIS v. THE STATE.

"KENO"—*A gambling device, etc.*—All persons who play at the game commonly called and known as "*Keno*," are guilty of gambling; and the person who sets up, keeps or exhibits this apparatus, contrivance or machine, is guilty of setting up, keeping or exhibiting a gambling device, and is liable to the penalties of the statute.

MISCONDUCT OF JURY—*When defendant cannot complain.*—Where misconduct on the part of jurors has been of injury to a party, it is the duty of the court to set aside the verdict, but the defendant cannot complain where the act or misconduct would have been for his benefit.

APPEAL FROM JEFFERSON CRIMINAL COURT.

HON. I. McL. BARTON, *Criminal Judge.*

*J. A. Williams*, for Appellant.
*Montgomery, Attorney General*, for Appellee.

BENNETT, J.—This is a conviction for exhibiting a gambling device.

The record presents three questions for adjudication. 1st. Did the indictment allege a public offense? 2d. Did the defendant exhibit a gambling device? 3d. Was there such misconduct on the part of the jury, trying the case, as to warrant the court to set aside the verdict?

Did the indictment allege a public offense?

The indictment accuses James M. Portis of the crime of exhibiting a gambling device, committed as follows, viz: "The said James M. Portis, in the county aforesaid, on or about the 3d day of January, 1871, did then and there unlawfully set up and exhibit a certain gaming bank or gambling device adapted, devised or designed for the purpose of playing a game of chance or at which money or property may be won or lost, and property was won or lost at the time of said exhibition, which said gaming bank or gambling device aforesaid, is commonly called "keno."

This kind of a gambling bank or gambling device is not specifically named in the statute, nor is it known judicially to

the court. Therefore, in order to determine that it falls within the denunciations of *Sec.* 1, *Art.* 3, *Chap.* 51, *Gould's Digest*, which denounces heavy penalties against those convicted of its violation, it should appear that the table, device, bank or machine is such as is used for gambling for money or property. The statute denounces, by name, the setting up, keeping and exhibiting, for instance, a faro bank, at which money can be lost and won. Thus a legal signification is given to a device or table of that kind and is specifically prohibited. But not so with "keno." This only, if at all, is denounced under the general prohibition. The indictment must show that it comes under this general prohibition.

The indictment under consideration shows that the words of the statute were literally followed.

An indictment based upon a statutory offense is good if it follows the statute. *People vs. Beatty*, 14 *Cal.*, 566; *Spratt vs. The State*, 8 *Miss.*, 247; *State vs. Ward*, 9 *Texas*, 370; *Cram vs. State*, 14 *Ib.*, 634; *Reeves vs. State*, 9 *Ib.*, 447.

The demurrer was properly overruled.

Did the defendant exhibit a gambling device?

The scheme is denominated "keno," a gaming bank or gambling device, at which money or property may be won or lost. It is an invention or device of modern date, ingeniously contrived to evade the law against gaming and lotteries. The plan is thus described by the witnesses: "The keeper of the game has a globe; there are put in it ninety balls, each numbered, from one to ninety, and then there are two hundred cards, with fifteen numbers on each card, five numbers in each row; then each player buys a card which contains the fifteen numbers, for which he pays the keeper of the game fifty cents, and others do likewise until several cards are sold; the roller, as he is called, turns the globe over and takes out one of the balls and calls out the number of such ball, and if any one of the players have a number on a card which they have purchased, corresponding to the number so called out, such player puts a check on such number on his card, and so

on, at each call by the roller, until one of the players has five checks in a row on his card, and then he has made what they call "keno," and then the game stops. The globe, from which the balls are taken by the roller, sits upon a table, in one end of which is a drawer from which change is made by the collector, and *chips*, frequently issued in lieu of money, redeemable by the collector; and the person who collects the money from the parties who have bought cards, takes up the card that has "*kenoed*" and calls its number, and if it is pegged, its number is also called by the roller. The collector then calls out the numbers on the card that are contained in the row that has "*kenoed*," and as he calls a number, the roller examines the balls that have come out, and if the numbers called out by the collector, as being on the card, correspond with the balls that are out, the collector announces that "*keno is correct*," and the money that has been paid for the cards sold, is paid over to the holder of the lucky card."

Is this a gambling device? Gaming is the risking of money, between two or more persons, on a contest or chance of any kind, where one must be *loser* and the other *gainer*. Some games depend altogether upon skill, others upon chance, and others are of a mixed nature. Billiards are an example of the first, lotteries of the second, and backgammon of the last. 2 *Bouvier's Law Dic.*, 553.

Device is something formed by design, and has reference to something worked out for exhibition or show.

A gambling device may then be defined to be an invention to determine the question as to who wins and who loses, that risk their money on a contest or chance of any kind.

The denunciations, however, of the statutes are against banks and devices, constructed for and used for gambling purposes, and not against such as are constructed and used for purposes of amusement, as chess, and backgammon, etc. It was the great evils of gaming tables and the thousand and one gambling devices that are constantly being invented to evade and cheat the law, it was intended to suppress. These

statutes should be liberally construed by courts of justice in aid of the legislative intention, so, if possible, to rid communities of these growing corruptions and to check these pernicious practices.

This "keno" institution, with its globes, balls and cards, so far as the court is advised, was not invented for the purpose of innocent amusement or pleasant pastime, but is set up, kept and exhibited to induce numerous persons to buy the use of cards at a small sum of money, with a chance, by the aid of the other appliances of this device—(the balls, globe and lackey who turns them), to win a much larger one, the sum total of each one's contribution. While the keeper or exhibitor is certain to get the per centage for the use of his device, yet he, by its assistance, determines the question as to whether A or B shall take all the money, less the per centage, or whether they shall lose what they have contributed for the use of the cards. It is not that species of gaming called a lottery. A lottery, says Webster, is a "distribution of prizes by chance." The prizes have an existence before tickets are sold; but in "keno," each player puts up his fifty cents to make an aggregate sum, which is the amount played for.

The description given of this game, by the witnesses, makes it purely a game of chance; for each person putting up money, in effect, bets that the card he has selected contains the numbers which will entitle him to the money of the others engaged in the game, and this bet is determined by the device exhibited. According to every correct idea of legal construction, this is gaming, and all players are guilty of gambling, and the person who sets up, keeps or exhibits this apparatus, contrivance or machine, is guilty of setting up, keeping, or exhibiting a gambling device, and is liable to the penalties of the statute.

The evidence, as is disclosed by the record, is positive and clear that the defendant did exhibit this gambling device as charged. Both law and evidence fully sustain the verdict.

*Third.* Was there such misconduct on the part of the jury trying the case, as to warrant the court to set aside the verdict?

During the trial, one of the jurors sitting in the case, and while a recess was had, said to one Bluther, that if he (Bluther) would give him (the juror) fifty cents, he would hang the jury so that the defendant would get clear of "keno." Where misconduct on the part of jurors has been of injury to a party, it is the duty of a court to set aside the verdict. It was misconduct on the part of the juror to offer to hang the jury for the defendant for money. But it appears he did not do what he offered to do, but decided according to the law and the evidence, and no injury resulted from the act. If he had done what he offered to do, the State and not the defendant, would have been the injured party, and the defendant cannot complain of an act that would have been for his benefit. This juror should have been heavily fined, but his act created no cause for a new trial.

No error appearing in the record, the judgment of the Criminal Court of Jefferson county is in all things affirmed.