PRE-PAID SOLUTIONS, INC., and Grady Bowers *v.*
CITY OF LITTLE ROCK; Larry Jegley,
Pulaski County Prosecuting Attorney; and
Randy Johnson, Pulaski County Sheriff

00-794                                      34 S.W.3d 360

Supreme Court of Arkansas
Opinion delivered January 11, 2001

*Dover & Dixon, P.A.,* by: *Darrin O'Quinn,* for appellant.

*Mark Pryor,* Att'y Gen., by: *Lori Freno,* Ass't Att'y Gen., for appellee Larry Jegley.

*Judy Kaye Mason,* Deputy City Att'y, for appellee City of Little Rock.

*Karla Burnett* and *Amanda Mankin,* for appellee Pulaski County Sheriff.

DONALD L. CORBIN, Justice. The issue in this case is whether a certain type of telephone-card vending machine is an illegal gambling device or a lottery. Appellants Pre-Paid Solutions, Inc., and Grady Bowers filed a petition in the Pulaski County Circuit Court seeking a declaratory judgment that the machine is not a gambling device, under Ark. Code Ann. § 5-66-104 (Repl. 1997), or a lottery, under Article 19, Section 14, of the Arkansas Constitution. Appellants also sought an injunction to prevent Appellees, the City of Little Rock; the Pulaski County Prosecuting Attorney; and the Pulaski County Sheriff, from raiding Appellants' businesses and attempting to prohibit persons from playing the games on these machines. The trial court denied Appel-

lants' requested relief and found that the machine is prohibited by law, either as an illegal gambling device or a lottery. Because this appeal presents an issue of substantial public interest, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(b)(4). We find no error and affirm.

The record reflects that Appellant Bowers operates a video rental store in Little Rock, where he had proposed installing telephone-card vending machines supplied by Appellant Pre-Paid Solutions, Inc. The machines operate as follows. A patron places a $1 bill in the machine, and the machine prints an "Emergency Long Distance Telephone Card" good for three minutes of long distance. At the same time, the machine registers a number of play credits. The patron may then play a game on the machine "similar to tic-tac-toe on a 3 x 3 matrix consisting of various symbols which may be lined up for additional points." These points may then be redeemed for a cash prize ranging from $1 to $1,000. Additionally, after using the prepaid telephone card, the patron may mail the used card to Appellants for a supplemental drawing for various prizes such as electronics or airline tickets. If a patron does not wish to purchase a telephone card but still wants to play the game, he or she may use one of the self-addressed, stamped post cards provided at the store and mail it to Appellants for a free-play certificate. A patron may then redeem the free-play certificate for a $1 bill to play the game.

The record reflects numerous motions and briefs filed by all parties. Particularly, Appellants filed a motion for summary judgment, and, likewise, Appellee Larry Jegley, Pulaski County Prosecuting Attorney, filed a motion for summary judgment. During the hearings on the motions, the trial court received testimony from two witnesses, Appellant Bowers and Daniel Jester, director of business development for Appellant Pre-Paid Solutions, Inc. The trial court also viewed a demonstration of the machine. Based upon the evidence received, the trial court granted Appellee Jegley's motion for summary judgment. The trial judge found that the machine was an illegal gambling device, reasoning: "I am convinced that this is a slot machine, that it is just pure and simple something that looks like, sounds like, acts like, works like a slot machine is a slot machine. And I think that's what this is[.]" Appellants now appeal this finding.

Before we address the merits of Appellants' arguments we must clarify the nature of the trial court's order. Appellants view the order as one granting summary judgment, and they urge us to review it as such. We believe that Appellants' characterization of the order is inaccurate for two reasons. First, the language of the order goes beyond the grant of summary judgment to Appellee Jegley, denying all relief requested by Appellants. Second, it is undisputed that the trial court received testimony from two witnesses and also viewed an in-court demonstration of Appellants' machine. This court has consistently held that where, in a summary-judgment hearing, the trial court goes beyond the type of evidence provided in Ark. R. Civ. P. 56(c) and receives oral testimony, the matter is converted from a proceeding for summary judgment to a bench trial. *See Hannon v. Armorel Sch. Dist. #9*, 329 Ark. 267, 946 S.W.2d 950 (1997); *Honeycutt v. City of Fort Smith*, 327 Ark. 530, 939 S.W.2d 306 (1997). Accordingly, we review the judgment in this case as that resulting from a bench trial.

Our standard of review on appeals from bench trials is whether the trial judge's findings were clearly erroneous or clearly against the preponderance of the evidence. *See* Ark. R. Civ. P 52(a); *Arkansas Transit Homes, Inc. v. Aetna Life & Cas.*, 341 Ark. 317, 16 S.W.3d 545 (2000); *Neal v. Hollingsworth*, 338 Ark. 251, 992 S.W.2d 771 (1999). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Id.* We view the evidence in a light most favorable to the appellee, resolving all inferences in favor of the appellee. *Id.* Disputed facts and determinations of witness credibility are within the province of the factfinder. *Id.*

Appellants contend that the games on their machines are merely promotional sweepstakes similar to those offered by McDonald's, Burger King, or Pepsi Cola. They argue that because they allow a patron to play the game for free, the element of consideration is missing and, thus, the game is not a lottery under Article 19, Section 14, of the Arkansas Constitution. They also argue that because no consideration is given, a patron does not risk anything of value by playing the game. We disagree.

This court has defined gaming or gambling as "the risking of money, between two or more persons, on a contest or chance of

any kind, where one must be *loser* and the other *gainer*." *State v. Torres*, 309 Ark. 422, 425, 831 S.W.2d 903, 905 (1992) (quoting *Portis v. State*, 27 Ark. 360, 362 (1872)). Similarly, a gambling device is "an invention to determine the question as to who wins and who loses, that risk their money on a contest or chance of any kind." *Portis*, 27 Ark. at 362. Our Criminal Code prohibits certain types of gaming. *See* Ark. Code Ann. §§ 5-66-101 to -119 (Repl. 1997). Particularly, section 5-66-104 prohibits gambling or gaming devices:

> Every person who shall set up, keep, or exhibit any gaming table or gambling device ... *designed for the purpose of playing any game of chance, or at which any money or property may be won or lost,* shall be deemed guilty of a misdemeanor and on conviction shall be fined in any sum not less than one hundred dollars ($100) and may be imprisoned any length of time not less than thirty (30) days nor more than one (1) year. [Emphasis added.]

Similarly, section 5-66-106 prohibits any person from "betting any money or other valuable thing or any representative of any thing that is esteemed of value" on any game prohibited under section 5-66-104.

This court has had few opportunities to interpret section 5-66-104 and its predecessors. Notwithstanding, two cases decided by this court are controlling of the issue in the present case: *Rankin v. Mills Novelty Co.*, 182 Ark. 561, 32 S.W.2d 161 (1930), and *Howell v. State*, 184 Ark. 109, 40 S.W.2d 782 (1931). The machines at issue in both of those cases were very similar. When the patron deposited a nickel into the machine, he or she would receive a package of mints. The patron would also receive anywhere from two to twenty slugs, which could then be used to play a game of chance on the machine. The slugs had no other value and could not be used to purchase more mints. In *Rankin*, the game was designed to imitate a baseball game, while in *Howell*, the game consisted of reels that would spin showing pictures of fruits and bells. In both cases, this court concluded that the machines were illegal gambling devices.

In *Rankin*, this court held:

> In order to constitute a gaming device under [§ 2630 of Crawford & Moses' Digest], it must be one that is adapted or designed for the purpose of playing any game of chance or *at which*

> *any money or property may be won or lost,* and any one who shall bet any money or other valuable thing, or "*any representative of any thing that is esteemed of value,*" is guilty under § 2634 of Crawford & Moses' Digest of betting on a gambling device. By § 2640 of the same chapter of the Digest gambling is defined as the betting of any money or any valuable thing on any game of hazard or skill. It is clear from these sections and the entire chapter on gaming that the word "property" as used in § 2630 and the words "valuable thing" mentioned in other sections are used synonymously, and that any valuable thing or "any representative of any thing that is esteemed of value" is "property" within the meaning of § 2630, *supra.*

182 Ark. at 562, 32 S.W.2d at 162. This court went on to hold that the right to play a game on the vending machine was a "property" right, within the meaning of § 2630, the predecessor to section 5-66-104. Additionally, this court noted that the machine was attractive to children such that they may be induced to spend their nickels not for the mints, but for the chance to play the game.

    ■ In *Howell,* this court relied on the decision in *Rankin,* but also cited with approval 27 C.J. 989 for determining when a slot machine is a gambling device:

> [W]here one who plays a slot machine stands to win or lose money, trade, or checks, by hazard of chance, the machine is a gambling device. The machine is a gambling device where its operation is such that, *although the player in any event will receive something, he stands a chance to win something in addition.*

184 Ark. at 111, 40 S.W.2d at 783 (citations omitted) (emphasis added). Accordingly, the *Howell* court held that the vending machine was a gambling device because the player stood to win something in addition to the package of mints.

    The machine demonstrated below is remarkably similar to the machines examined in *Rankin* and *Howell.* When a patron puts money into Appellants' machine, it immediately prints out a telephone card. After the card is printed, the amount of money that the patron put into the machine, whether it be $1, $5, etc., appears on the machine in the form of points that have a value of one penny each. The patron may then redeem the points, thus getting a full return on the money spent for the telephone card, or play the game for the chance to win additional money. To play the game, the player pushes a button that starts the rolling mechanism, much

like a slot machine. The patron then pushes another button to stop the mechanism. If certain symbols line up upon stopping the mechanism, the player wins additional points. Again, the patron then has the option of either redeeming the points for money or continuing the play.

■ Pursuant to the clear language of section 5-66-104, Appellants' machine is a gambling device designed for the purpose of playing a game of chance at which any money or property may be won or lost. There is no dispute that the machine is an invention that determines the question of who wins and who loses at a game of chance. See *Portis*, 27 Ark. 360. Nor is there any dispute that the game provides the player with the opportunity to win something in addition to the item for which he or she initially paid. *See Howell*, 184 Ark. 109, 40 S.W.2d 782. Additionally, under *Rankin*, 182 Ark. 561, 32 S.W.2d 161, the right to play the game constitutes "property" that may be won or lost in violation of section 5-66-104. Thus, it is of no consequence that Appellants offer patrons the opportunity to initiate the game without making a purchase. Moreover, once the free-play certificate is redeemed for a $1 bill, the player undoubtedly possesses property that he or she may risk by inserting the money into the machine to play the game. Every time the player elects to risk the value of the points awarded on the machine for another spin of the reels, he or she is risking that property for the chance to win additional money. We thus affirm the trial court's finding that Appellants' machine is an illegal gambling device. Because we affirm on this point, it is not necessary to reach the issue whether the game played on the machine is prohibited as a lottery under Article 19, Section 14, of the Arkansas Constitution.