David SHARP and Carol Sharp *v*. STATE of Arkansas

02-352                                              88 S.W.3d 848

Supreme Court of Arkansas
Opinion delivered November 7, 2002

530

Gordon, Caruth & Virden, P.L.C., by: Jeannie L. Denniston, for appellants.

Mark Pryor, Att'y Gen., by: David R. Raupp, Sr. Ass't Att'y Gen., for appellee.

JIM HANNAH, Justice. David and Carol Sharp appeal from an order of the Independence County Circuit Court that twenty-three video arcade machines be destroyed as illegal gaming devices under Ark. Code Ann. § 5-66-108 (Repl. 1997), and as devices constituting an illegal lottery under Arkansas Constitution Art. 19, § 20. The Sharps allege the devices were properly licensed, were legally possessed, and, therefore, are not subject to destruction. Whether the machines were licensed is not relevant. Because the machines were designed for the purpose of playing a game of chance whereby money or property will be lost or won, they constitute illegal gaming devices and are subject to destruction under Ark. Code Ann. § 5-66-104 (Repl. 1997). Because we hold the machines are illegal gaming devices, we need not reach the issue of whether the machines or their use may constitute a lottery. The order of the trial court is affirmed.

*Facts*

The Sharps established a business in Batesville with twenty-three machines they characterize as "video arcade machines." The Sharps filed applications and paid for amusement machine stamps on the machines. On one application for amusement

machine stamps, the Sharps denied that there was an automatic payoff device on the machines. This line was left blank on other applications. None of the legible applications declared that operation of the machines involved an element of chance. The copy of one application is obscured by receipts so it is not possible to determine what, if anything, was declared regarding automatic payoff or elements of chance.

The Sharps hired Trudy and Bill Dutton to run the business. One of the Duttons' duties was to purchase prizes that customers could redeem with credits they won in playing the machines. According to the testimony of criminal investigator John Thomas, the machines are of at least two types: video poker and video slot machines. Thomas testified that he played a video poker machine by purchasing ten dollars' worth of credits. Depending on the outcome of play, which involved choosing which cards to keep and which to discard, he either won or lost credits. According to Thomas, winning credits entitled the player to continue to play, or if a player had won sufficient credits, to redeem the credits for a prize. Thomas further testified that on the slot machines, a player won or lost credits based upon what characters appeared on the monitor. As with the video poker machine, if players won on the slot machines, they received credits that allowed them to continue to play or to redeem the credits for prizes.

Based upon his investigation, Thomas, and investigator John Carroll, obtained a warrant and seized the machines. The Duttons were charged and pled guilty to the unclassified felony of running a gambling house. The Sharps intervened when the State filed a petition for destruction of the machines under Ark. Code Ann. §5-66-108 (Repl. 1997). The motion to intervene was granted at the same time the circuit court declared the machines to be illegal gambling devices and ordered them destroyed. This appeal followed, and the Sharps allege that the machines must be returned to them.

### Standard of Review

Where, as in this case, a hearing on alleged gaming machines is held, and testimony is taken, the proceeding is a bench

trial. *Pre-Paid Solutions, Inc. v. City of Little Rock*, 343 Ark. 317, 34 S.W.3d 360 (2001). Consequently, the standard of review is that of a bench trial. The issue is whether the trial judge's findings were clearly erroneous or clearly against the preponderance of the evidence. *Pre-Paid Solutions, supra.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Id.* We view the evidence in a light most favorable to the appellee and resolve all inferences in favor of the appellee. *Id.* Also, disputed facts and determinations of credibility are within the province of the factfinder. *Id.*

## Jurisdiction

In *Slots, Inc. v. State*, 342 Ark. 609, 30 S.W.2d 105 (2000), this court analogized the requirement of a certification under Ark. R. Crim. P. 15.2(e), that the contraband to be destroyed is no longer needed for evidentiary purposes, to an order under Ark. R. Civ. P. 54(b). In *Slots*, the appeal was dismissed without prejudice because there was no certification under Ark. R. Crim. P. 15.2(e).

In the case before us, the issue of whether the machines needed to be preserved for evidentiary purposes was before the trial court. The State filed the motion for destruction of the devices. The Duttons filed a Response to Petition for Destruction and asserted that the machines are evidence that is part of the ongoing criminal proceedings and should be preserved until the final disposition of the criminal proceedings. The Sharps responded to the Petition for Destruction by intervening and asserting that the machines were legal and not subject to destruction. On August 6, 2001, a hearing was held in which the trial court stated that the petition by the State, the response by the Duttons, and the response by the Sharps had been read and considered. The trial court accepted the Duttons' guilty pleas and entered a judgment of conviction and sentence against each of them. Then, the trial court considered the petition for destruction and whether the machines were illegal gaming devices or constituted a lottery. The trial court was thus presented with the issue of whether the machines needed to be preserved and con-

cluded they did not need to be preserved when the order to destroy them was issued. Thus, this case is properly before us.

### Gambling

The Sharps allege that the machines are legal amusement devices under Ark. Code Ann. § 26-57-402 (Supp. 2001). As proof, they offer documents showing they paid taxes on them as amusement devices. We note, however, that the cited statutes relate to taxes and not criminal conduct. We further note that Ark. Code Ann. §26-57-403(a) (Repl. 1997) provides that the cited tax statutes, Ark. Code Ann. § 26-57-402 and § 26-57-404 (Supp. 2001), may not be deemed to legalize, authorize, license or permit a number of devices, including slot machines, or any machine equipped with any automatic payoff mechanism.

.Conversely to the Sharps, the State argues the machines are prohibited gambling devices under Ark. Code Ann. § 5-66-104. Section 5-66-104 prohibits devices designed for the purpose of playing any game of chance. Section 26-57-402(1) defines devices which provide amusement, diversion or entertainment. The following examples are given in Section 26-57-402:

> radio rifles, miniature football, golf, baseball, hockey, bumper pool, tennis, shooting galleries, pool tables, bowling, shuffleboard, pinball tables, marble tables, music vending phonographs, jukeboxes, cranes, video games, claw machines, bowling machines, countertop machines, novelty arcade machines, other similar musical devices for entertainment, and other miniature games, whether or not such machines show a score, and which are not otherwise excluded in this subchapter;

Neither video poker nor slot machines are listed as amusement devices in Section 26-57-402.

In *Rankin v. Mills Novelty Co*, 182 Ark. 561, 32 S.W.2d 161 (1930), this court discussed Ark. Code Ann. § 5-66-104 (then Crawford and Moses Digest § 2630) in the context of a machine that distributed mints for a nickel. When one placed a nickel in the machine, one received not only the mints but also between two and twenty slugs. *Rankin*, 182 Ark. at 562. These slugs could then be used to play a game of baseball on the machine. *Id.* Mints

could not be purchased with the slugs. *Id.* This court noted that there was an element of chance in the number of slugs one might receive upon putting a nickel in the machine. *Rankin,* 182 Ark. at 563. This court then stated, "The machine under consideration is attractive to children, and the fact that they may sometimes secure the right to play an attractive game- the opportunity varying with the number of slugs first received and upon 'base hits' made- induces them to spend their nickels, not for the mints but for the possibility of the game, and is gambling within the meaning of our statute." *Rankin,* 182 Ark. at 563. Thus, because a person could deposit a nickel to take the chance of receiving enough slugs to play a game of baseball, rather than to purchase the mints, the machine was a game of chance, and it was an illegal gaming device under Section 5-66-104.

■ In *Portis v. State,* 27 Ark. 360 (1872) this court stated that gaming or gambling is "the risking of money between two or more persons, on a contest or chance of any kind, where one must be loser and the other gainer." *Portis,* 27 Ark. at 362. This language was quoted in *State v. Torres,* 309 Ark. 422, 831 S.W.2d 903 (1992), and more recently in *Pre-Paid Solutions, supra.* To be a prohibited gaming device, the device must be one that is adapted or designed for the purpose of playing a game of chance at which money or property may be won or lost. *Pre-Paid Solutions, supra,* (citing *Rankin, supra).* Where the machine is played to win or lose by hazard of chance, it is a gaming device. *Pre-Paid Solution, supra* (citing *Howell v. State,* 194 Ark. 109, 40 S.W.2d 782 (1931)).

■ The machine played by Thomas was one where the player either won or lost hands of poker. If the player won, he or she could use the credits won to play more games, or, if he or she had won enough credits, the credits could be redeemed for prizes. If the player lost all his or her credits, the game was over. The slot machine operated similarly, except instead of using cards, it was based upon the chance a certain pattern of objects would appear on the monitor. It is clear that the intent in using the credits to play the machines was to win or lose credits. Credits had to be purchased to commence playing the machine. The intent was to play a game of chance, that is the credits were risked in the hope that a good hand would be received in the case of poker, or that the images would appear in the proper order in the case of the slot machine. There was a risk undertaken between the player and the

business, a contest of chance, whereby either the player or the business would be the winner. The other would necessarily be the loser. This is a game of chance. The trial court correctly found the poker and slot machines are illegal gaming devices and subject to destruction under Ark. Code Ann. § 5-66-104.

### Lottery

Because we affirm the trial court's finding that the machines are illegal gaming devices, it is not necessary to reach the issue of whether the games played on the machines is prohibited as a lottery under Article 19, Section 14, of the Arkansas Constitution. *Pre-paid Solution, supra.*

Affirmed.

ARNOLD, C.J., and THORNTON, J., not participating.