Peggy PARIS *v.* STATE of Arkansas

CA CR 03-1413                                          192 S.W.3d 277

Court of Appeals of Arkansas
Division II
Opinion delivered September 22, 2004

[Rehearing denied October 27, 2004.]

Appellant, *pro se.*

*Mike Beebe*, Att'y Gen., by: *Brad Newman*, Asst. Att'y Gen., for appellee.

JOSEPHINE LINKER HART, Judge. Appellant, Peggy Paris, appeals from the circuit court's order for destruction of her gaming devices. Appearing before this court pro se, she raises several issues on appeal, arguing, among other things, that the machines sought to be destroyed were statutorily permissible amusement devices. Because we conclude that the circuit court did not clearly err in finding that the machines were illegal gambling devices as well as being slot machines specifically excluded from the definition of amusement devices, we affirm the court's order.

Thirty-four devices were seized from appellant's business, the Golden Goose Arcade. Following the seizure, appellant sought return of the seized property, arguing that the machines were amusement devices permitted by statute. After a hearing, the court denied her motion and, as requested by the State, entered an order permitting the destruction of the devices. In the order of destruction, the court found that the seized devices were illegal gambling devices and also slot machines specifically excluded from the definition of amusement devices. Appellant challenges this ruling on appeal.

In her argument, appellant notes that "amusement devices" are defined as "any coin-operated machine, device, or apparatus which provides amusement, diversion, or entertainment and includes, but is not limited to, such games as . . . video games . . . whether or not such machines show a score, and which are not otherwise excluded in this subchapter. . . ." Ark.CodeAnn. § 26-57-402(1) (Supp. 2003). She argues that her devices were permissible video games, not prohibited gambling devices. The State, however, notes that the statutes further provide that nothing contained in Ark. Code Ann. § 26-57-402 and other statutes "shall be deemed to legalize, authorize, license, or permit any machines commonly known as slot machines, roscoes, jackpots, or any machine equipped with any automatic money payoff mechanism." Ark. Code Ann. § 26-57-403(a) (Repl. 1997). Further, the State notes that our criminal statutes prohibit gambling devices, citing Ark. Code Ann. § 5-66-104 (Repl. 1997), which provides as follows:

> Every person who shall set up, keep, or exhibit any gaming table or gambling device, commonly called A. B. C., E. O., roulette, rouge et noir, or any faro bank, or any other gaming table or gambling device, or bank of the like or similar kind, or of any other description although not herein named, be the name or denomina-

tion what it may, adapted, devised, or designed for the purpose of playing any game of chance, or at which any money or property may be won or lost, shall be deemed guilty of a misdemeanor and on conviction shall be fined in any sum not less than one hundred dollars ($100) and may be imprisoned any length of time not less than thirty (30) days nor more than one (1) year.

As there was a bench trial, on review we determine whether the circuit court's findings were clearly erroneous. *Sharp v. State*, 350 Ark. 529, 532, 88 S.W.3d 848, 850 (2002). At the bench trial, the trial judge not only heard testimony from Officer Kimberly Pearson of the Searcy Police Department regarding how the machines operated, but also, after receiving permission from the parties, personally examined the machines. In his order, he described the machines as follows:

> With these games, the player pays money to purchase credits, which are electronically loaded onto the machine by the operator of the arcade. After the player determines how many of the credits on the machine are to be placed at risk by a particular play of the machine, the player starts the operation of the machine by a manual act of pushing or punching a button or device located on the machine. The machine then operates by causing pictures, diagrams, lines or other depictions, herein after referred to as "*icons*[,"] on the video screen of the machine to move in a random pattern at a very high velocity. The movement of the "icons" stop[s] when the player pushes a stop button or, if no such button is pushed, at a time determined by a preset electronic command within the machine.
>
> . . . .
>
> If the "icons" stop in a certain pattern the player wins a preset number of credits. If not, the player [loses] the amount of credits which were placed at risk and those credits are subtracted from the total on the machine. If all credits are lost the player must purchase additional credits from the arcade operator.

Pearson, who operated the devices at the arcade while undercover, testified that after ending a session, a player "cashed out" by having the operator of the arcade present the player with a five-dollar ticket for each five-hundred credits acquired, which could then be used to play the game at a later time. Alternatively, the player could use the tickets to purchase items from a prize display. When purchasing something upon cashing out, the player was required to sign an affidavit stating that nothing was received that had a value of over $12.50.

The trial judge further wrote that "[a]fter hearing the evidence and viewing the operation of the machines," it was his opinion that "no player is capable of manipulating the location of the 'icons' by manually stopping the machine and no level of skill for such an act is involved." The court noted that the movement of the icons "is simply [too] fast for such human manipulation," and that the location of the icons when the machine stopped was "purely a function of chance or a preset location controlled by the machine[']s internal electronic software." Pearson testified that there was no element of skill in the game and that it was purely a game of chance.

In determining whether the court clearly erred in concluding that the devices were slot machines and illegal gambling devices, we are guided by the Arkansas Supreme Court's opinion in *Sharp*. There, the court stated that "[t]o be a prohibited gaming device, the device must be one that is adapted or designed for the purpose of playing a game of chance at which money or property may be won or lost," and "[w]here the machine is played to win or lose by hazard of chance, it is a gaming device." *Sharp*, 350 Ark. at 534, 88 S.W.3d at 852. The operation of the devices in *Sharp*, which the court described as slot machines, was based on the chance that a certain pattern of objects would appear on the monitor. Credits had to be purchased to begin playing the machines, and the reason for using the credits while playing the machines was to win or lose credits. Further, the court noted the testimony that if players won, they received credits that allowed them to continue to play or to redeem the credits for prizes. The court stated that "[t]he intent was to play a game of chance, that is the credits were risked in the hope that ... the images would appear in the proper order...." *Id.* at 534, 88 S.W.3d at 852. Thus, the court concluded that "[t]here was a risk undertaken between the player and the business, a contest of chance, whereby either the player or the business would be the winner. The other would necessarily be the loser. This is a game of chance." *Id.* at 534-35, 88 S.W.3d at 852. The court held that the circuit court did not err in finding that the devices were illegal gaming devices subject to destruction under Ark. Code Ann. § 5-66-104.

The operation of the devices in the case at bar is remarkably similar to operation of the devices described in *Sharp* as slot machines. In both instances, purchased credits were risked in a game of chance for the purpose of obtaining additional credits or a prize. Thus, just as devices described as slot machines in *Sharp*

were determined to be illegal gaming devices, appellant's devices are likewise gambling devices proscribed by Ark. Code Ann. § 5-66-104. Further, because they are slot machines, they are expressly excluded by Ark. Code Ann. § 26-57-403(a) from the definition of amusement devices found at Ark. Code Ann. § 26-57-402(1). Consequently, we conclude that the circuit court did not clearly err in finding that the devices were illegal gambling devices as well as being slot machines excluded from the definition of amusement devices, and we affirm on this point.

In challenging the circuit court's ruling, appellant also argues that the court erred in stating in the order of destruction that the intent of·the law was to permit only children to play amusement devices. What the trial judge actually said was that while "it may have been the intention of some legislators to allow children to play amusement games in a pizza parlor and win a stuffed animal," it was not, in his opinion, "the intent of the legislature to allow public establishments, which offer adult patrons gambling devices on which they could bet, win[,] or lose unlimited amounts of money." Given our affirmance of the court's finding that the devices were illegal gaming devices and also prohibited slot machines, we need not address appellant's argument that adults may play amusement devices.

■ Appellant raised on appeal several other issues that were not raised at trial and therefore not preserved for appellate review. We note that even constitutional issues must first be presented below to be preserved for appellate review. *See, e.g.*, *Nance v. State*, 339 Ark. 192, 200, 4 S.W.3d 501, 506 (1999). Appellant asks that this court overlook these procedural irregularities because she is appearing pro se. However, as our supreme court has said before, pro se appellants receive no special consideration of their argument and are held to the same standard as licensed attorneys. *See Eliott v. State*, 342 Ark. 237, 241, 27 S.W.3d 432, 435 (2000).

■ Appellant argues that she was denied equal protection, that she was selectively prosecuted, and that the taking of her property constituted cruel and unusual punishment. Before the circuit court, however, the only constitutional argument made by appellant was that various statutes were void for vagueness and overbroad, citing her rights to due process under the Fifth and Fourteenth Amendments to the United States Constitution. Thus,

the issues raised on appeal were not raised at trial and consequently were not preserved for appellate review.

Appellant further argues on appeal that, even though her trial counsel consented to the court personally inspecting the devices, the court erred in making the inspection and relying on those observations in making a decision. Again, this issue was not raised at trial and therefore was not preserved for appellate review. In this point on appeal she further contends that the court should have considered the evidence presented to the court. There is, however, no indication that the court did not consider the evidence presented.

Appellant also argues on appeal that Pearson should not have been allowed to testify as a lay witness regarding the operation of the devices. Appellant's argument at trial, however, was that Pearson could not testify as an expert witness, but only as a lay witness regarding their operation. Thus, the issue raised on appeal was not raised at trial, and consequently, we will not address it.

Affirmed.

STROUD, C.J., and VAUGHT, J., agree.