The Honorable Steve Oliver Prosecuting Attorney Eighteenth Judicial District East 501 Ouachita Avenue Hot Springs, Arkansas 71901
Dear Mr. Oliver:
I am writing in response to your request for an opinion on the following:
 A local resident named Frank Sears has contacted my office and various other heads of law enforcement for a legal opinion concerning the legality of a business venture. This business venture would provide corporations or individuals the opportunity to have a casino night or party. The business would provide tables, dealers, and chips for the people who utilize the service. Payment would be made by the individuals who utilize the items and services. When a company or individual arranged to have a casino night, it would be understood that the chips being played with are for play only and there would be no prizes, money, or anything of value to be obtained by the individuals who play or win with these chips. Companies or individuals who have a casino night as a charity event would do so with the understanding that all money paid by the participants to play would go to the charity designated by the company or individual and nothing of value would be received by the players.
 In essence, a fee would be paid to Mr. Sears for the use of the equipment and nothing of value would be paid to anyone participating in these games of chance.
 The question proposed is whether or not the above scenario would be in violation of the Arkansas Gambling statutes.
RESPONSE
 In my opinion, the question you have posed is factually specific and will require the discretion of an appropriate official to make a definitive determination. With respect to the legal standards that may be applicable in this situation, however, if there is no deviation or addition to the factual scenario described, it is unlikely to constitute a violation of the Constitutional prohibition on lotteries, the general prohibition on gambling on games of cards or on games of hazard or skill, or on the use of gambling devices or gaming tables. Whether anything used in the situation you have described is a "per se" gambling device without regard to its use is a question that I cannot address beyond setting forth the legal standard below. Additionally, I am unable to determine whether Act 1170 of 2005 would apply to this situation from your request for an opinion. Additional facts would be required to reach a definitive conclusion on any of the issues that you have presented and this office is neither authorized nor equipped to act as a finder of fact. I feel compelled to reiterate that any deviation from the scenario described may result in a different analysis or potential violation of the above-referenced prohibitions. Furthermore, while I appreciate your constituent's desire to comply with all applicable laws, I must note that this office is statutorily prohibited from offering private legal advice.
Constitutional Prohibition on Lotteries
 While your request for an opinion only references the Arkansas anti-gambling statutes, I will initially address the related prohibition on lotteries in Art. 19, § 14 of the Arkansas Constitution. This provision specifically states, "No lottery shall be authorized by the State, nor shall the sale of lottery tickets be allowed." Id. The Arkansas courts have defined a "lottery" as "a species of gaming which may be defined as a scheme for the distribution of prizes by chance among persons who have paid, or agreed to pay, a valuable consideration for the chance to obtain a prize." See Scott v. Dunaway, 228 Ark. 943, 311 S.W.2d 305 (1958); see also Op. Att'y Gen. 2004-357. As I explained in Op. Att'y Gen. 2005-034, this creates a three prong test where the initial question is whether consideration is paid to participate. The second question is whether the game is controlled by chance such that winning is not influenced by the skill or judgment of those participating. The third question is whether a prize is awarded. If any of these questions is answered in the negative, the scheme will not be considered a lottery. Id. (citing Op. Att'y Gen. 86-599).
As I have previously stated, "[t]he question of whether any particular game possesses the above-listed elements of a lottery is entirely a question of fact." Op. Att'y Gen. 2004-155. I am thus neither authorized nor equipped to make a determination in this situation as to whether a particular game would or would not be considered a lottery. Although you have recited some rudimentary facts about the proposed activity, detailed reference to the facts surrounding the actual conduct of the games would be necessary to reach definitive conclusions. Regardless, I will attempt to set forth the applicable standards.
Your request for an opinion sets forth two different factual scenarios under which the proposed service would be provided: a private party that is not necessarily for any established purpose and a party that is intended to be a charitable fundraiser. The first, the private party scenario, would not appear to violate the constitutional prohibition under the facts you describe, if, as you suggest, no prizes are to be awarded. I must note, however, that any variation from the factual situation set forth in your request may change the result.
The second scenario described in your request for an opinion is the charity event. Assuming that the facts described in the request for an opinion stay constant, the same analysis regarding the prize prong applies here as it did to the party scenario in determining whether a constitutional violation has occurred. In this situation, the payment to participate in the "casino night" would meet the payment prong of the lottery test, but absent some form of prizes being awarded there is no apparent violation of the constitutional prohibition on lotteries. As I noted earlier, though, any variation from the specific factual scenario provided to me in your request for an opinion may result in a different analysis.
Act 1170 of 2005
I am unclear from your request for an opinion whether Act 1170 of 2005 would apply. Act 1170 of 2005 amends a statutory provision in the subchapter regulating on-premises consumption of alcoholic beverages. Specifically, Act 1170 of 2005 added subdivision (15)(B) to A.C.A. § 3-9-326 as follows:
 It shall be unlawful and constitute a misdemeanor for any person holding a permit hereunder or his agents, servants, or employees knowingly to do any of the following acts:
* * *
 (15)(A) Keep on the permitted premises a slot machine or any gambling or gaming device, machine, or apparatus, except as provided in subdivision (15)(B) of this section.
 (B) An event held by a nonprofit organization that is exempt from taxation under § 26 U.S.C. 501(c)(3) shall be exempt from subdivision (15)(A) of this section if:
 (i) The non profit organization registers the event with the Alcoholic Beverage Control Division at least sixty (60) days before the event;
 (ii) All proceeds of the event are for the benefit of the nonprofit organization;
 (iii) The games in the event do not use money but may use some form of play money;
 (iv) No cash or other item of value is won or awarded as a prize; and
 (v) The event is for the amusement and not for gambling purposes in violation of Arkansas law or Article 19, Section 14 of the Arkansas Constitution.
* * *
A.C.A. § 3-9-236 (Supp. 2005). If the factual scenario in your request for an opinion involves an event held by a nonprofit organization at an establishment subject to A.C.A. § 3-9-236, the above listed requirements must be met for the event to be lawful. I cannot determine from the facts presented whether compliance with this act is contemplated or would be achieved. Assuming the inapplicability of Act 1170, it is necessary to address the remaining statutory provisions.
Statutory Prohibition on Gambling Houses
With respect to the prohibition on gambling houses in A.C.A. §5-66-103, it is my opinion that the strict factual background given in your request for an opinion may not amount to a violation of the section, but a proper determination may only be made under a factually-specific inquiry that this office is neither authorized nor equipped to undertake. Section 103 prohibits the keeping, conducting, or operating of gambling houses "or place[s] where gambling is carried on." Id. As I stated in Op. Att'y Gen. 2004-357:
 The Arkansas Supreme Court has explained that "the essence of the offense set out in § 5-66-103 is the keeping or maintaining of a house where those who wish to gamble may do so." McDougal v. State, 324 Ark. 354, 358, 922 S.W.2d 323 (1996) (citation omitted). The Arkansas Code does not define the terms "gambling" or "gaming." The Arkansas Supreme Court, however, has defined gambling as "the risking of money between two or more persons, on a contest or chance of any kind, where one must be the loser and the other gainer." Sharp v. State, 350 Ark. 529, 534, 88 S.W.3d 848 (2002) (quoting Portis v. State, 27 Ark. 360 (1872). Furthermore, the court has treated the two terms as interchangeable. Id.
Absent the risking of money or other valuable property in the outcome of a contest, there is no gambling. The Arkansas Supreme Court has thus long recognized that the anti-gambling laws do not prohibit allowing a game of poker to occur when there are no wagers. Ansley v. State, 36 Ark. 67 (1880) (reversing the conviction of a tavern owner for allowing a poker game to occur on the premises when there was no wagering under a former statute prohibiting a tavern keeper from allowing a game of cards on the premises).
It is unclear from your request for an opinion whether the individuals who actually play the games involved in this scheme pay any consideration other then the door fee associated with the charity event scenario. However, if, as posited in your request, there are no "prizes, money, or anything of value" being offered to the individuals playing the games, then it is unlikely that the scheme would be considered gambling for the purposes of the statutory prohibition against the keeping of a "gambling house."See, e.g., Sharp v. State, 350 Ark. 529, 534, 88 S.W.3d 848
(2002).
Statutory Prohibition on Gambling Devices or Gaming Tables
With respect to the prohibition against keeping or exhibiting gambling devices or gaming tables, A.C.A. § 5-66-104 states:
 Every person who shall set up, keep, or exhibit any gaming table or gambling device, commonly called A.B.C., E.O., roulette, rouge et noir, or any faro bank, or any other gaming table or gambling device, or bank of the like or similar kind, or of any other description although not herein named, be the name or denominations what it may, adapted, devised, or designed for the purpose of playing any game of chance, or at which any money or property may be won or lost, shall be deemed guilty of a misdemeanor . . . [.]
Id.[1]
Generally speaking, a "gambling device" and, by extension of the synonymous definition of "gaming" adopted by the court, a "gaming table," is "an invention to determine the question as to who wins and who loses, that risk their money on a contest or chance of any kind." Portis v. State, 27 Ark. 360, 362 (1872). A device may be a prohibited gambling device by being either a per se
gambling device or a gambling device by actual use.
Per se gambling device
If something is a gambling device per se, the "mere possession of it is punishable" under this provision. State v. 26 GamingMachines, 356 Ark. 47, 52, 145 S.W.3d 368 (2004). The court has attempted to define a per se gaming device several times in the past century. As recounted in 26 Gaming Machines, the court held a machine to be an illegal gaming device because it was "adapted or designed for the purposes of playing any game of chance or at which any money or property may be won or lost" and because it induced the players to spend money on the machine for the chance to play a "symbolic game of baseball," Rankin v.Mills Novelty Co., 182 Ark. 561, 32 S.W.2d 161 (1930). 26Gaming Machines, supra. Subsequently, the Court clarified that two slot machines were illegal gaming devices despite one being used partly for amusement because the devices "only reasonable and profitable use . . . was a game of chance" even if there were no prizes awarded, Steed v. State, 189 Ark. 389, 72 S.W.2d 542
(1934). Id. In Sharp v. State, the Arkansas Supreme Court clarified the definition of a "gambling device" as follows:
 To be a prohibited gaming device, the device must be one that is adapted or designed for the purpose of playing a game of chance at which money or property may be won or lost. [Pre-Paid Solutions, Inc. v. City of Little Rock, 343 Ark. 317, 34 S.W.3d 360
(2001) (citation omitted)]. Where the machine is played to win or lose by hazard of chance, it is a gaming device. Pre-Paid Solution, supra [(citation omitted)].
350 Ark. 539, 534, 88 S.W.3d 848 (2002). A per se gaming device is, therefore, a device or invention that is adapted or designed to determine the winner and loser in a game of chance and whose only reasonable and profitable use is to play a game of chance. In 26 Gaming Machines, the court stated that it "has also held that a machine was a gaming device per se even where no prize was awarded." 26 Gaming Machines, supra at 52-53 (citingStanley v. State, 194 Ark. 483, 107 S.W.2d 532 (1937)).
I am unable to determine whether any of the devices or tables to be used would be per se gambling devices from the facts recounted in your request for an opinion.[2] The Arkansas Courts have examined each device separately to determine whether the device is a gambling device per se. While certain devices, such as slot machines, Howell v. State, 184 Ark. 109,40 S.W.2d 782 (1931), video poker machines, Sharp, supra, and video slot machines, id., are clearly per se gambling devices under A.C.A. § 5-66-104. I cannot make a determination on the items to be used in the proposed business venture absent a specific factual review that this office is neither authorized nor equipped to undertake.
Gambling device by actual use
Additionally, the court has recognized that devices adapted andactually used for gambling or gaming run afoul of A.C.A. §5-66-104. State v. 26 Gaming Machines, supra; see also Albrightv. Muncrief, 206 Ark. 319, 176 S.W.2d 426 (1943) (teletype machines were not gambling devices per se but became gambling devices when used for gambling purposes); and State v.Saunders, 86 Ark. 353 (1908) (device need not be intended solely for gambling purposes to fall within the Arkansas prohibitions against gambling or gaming devices). For example, a pinball machine is not a per se gambling device but became a gambling device by actual use because the owner of the game would pay players for each free game won on the machine. Bostic v. City ofLittle Rock, 241 Ark. 671, 409 S.W.2d 825 (1966). The Arkansas Supreme Court recently reiterated that where the devices in question are not gambling devices per se, there must be evidence presented that the devices in question are actually used for gambling before a violation will be upheld. 26 GamingMachines, supra. Citing Blankenship v. State, 258 Ark. 535,527 S.W.2d 636 (1975), the court noted that that a ledger, three sheets of yellow paper with tickets wrapped inside of them, newspapers containing racing forms, a reserve of tickets, telephones, and checks were not gambling devices by use because there was no proof that the owner "ever made a specific bet."Id.
In my opinion, under the facts you describe, it is unlikely that the equipment you describe could be considered gambling devices by "actual use." The lack of any prizes awarded has been held to defeat a finding of a gambling device by actual use. See, 26Gaming Machines, supra (holding that where a "player inserts money and can play gambling-like games but never receives anything in return except amusement," the machines "are not actually used for gaming due to the absence of any payoff mechanism or reward"). As discussed above, however, the absence of a prize would not prevent a particular device from being a gambling device per se.
Statutory Prohibition against Wagering on Card Games
The Arkansas Code specifically prohibits gambling on poker games in Ark. Code Ann. § 5-66-112 (Repl. 1997).[3] The code provides:
 If any person shall be guilty of betting any money or any valuable thing on any game of brag, bluff, poker, seven-up, three-up, twenty-one, vingt-et-un, thirteen cards, the odd trick, forty-five, whist, or at any other game at cards, known by any name now known to the law, or with any other or new name or without any name, he shall, on conviction be fined in any sum not less than ten dollars ($10.00) nor more than twenty-five dollars ($25.00).
Id. The Arkansas Supreme Court has recognized that "betting" is synonymous with "gambling" or "wagering." McDonald v. Bryant,238 Ark. 338, 340, 381 S.W.2d 736 (1964). As discussed above, gambling or gaming requires the risking of money or something else of value between two or more players where one is the gainer and one is the loser. See, e.g., Op. Att'y Gen. 2004-357. In your request for an opinion, there are neither prizes being awarded nor, I assume, wagers placed on individual games in either the private-party or the charity event scenarios. Without a "prize" or "wager" of some form, there will be no player who is a "gainer" for the purposes of an analysis. If a player has nothing to gain, such as a prize or pool of money, from playing the game, there is no "gambling." See, e.g. Ansley v. State,36 Ark. 67 (1880).
I must reiterate that this office may not offer private legal advice. See, e.g., A.C.A. § 25-16-701 (Repl. 2002). As such, this opinion is not offered nor should it be relied upon for such a purpose. Additionally, the answers to the questions you have presented turn on specific factual analyses that this office is neither equipped nor authorized to make. A Prosecuting Attorney would have the discretion to determine whether the appropriate legal standards are being met by the specific factual scenarios.
Assistant Attorney General Joel DiPippa prepared the foregoing opinion, which I hereby approve.
Sincerely,
 MIKE BEEBE Attorney General
MB:JMD/cyh
[1] Arkansas Code Annotated § 5-66-103 also prohibits an individual from "setting up, keeping, or exhibiting any gambling device." The discussion of the distinct offense in A.C.A. §5-66-104 should be read to apply to the similar language found in A.C.A. § 5-66-103.
[2] One of my predecessors issued an opinion that could be read as opining that a "felt-covered blackjack table" is an illegalper se gambling device under the circumstances of that particular request for an opinion. See Op. Att'y Gen. 91-403.
[3] A separate provision of the Arkansas Code, A.C.A. §5-66-113 (Repl. 1997) prohibits betting on "any game of hazard or skill." The analysis of A.C.A. § 5-66-112 also applies to the substantially similar language in A.C.A. § 5-66-113.