The Honorable R. Gunner DeLay Prosecuting Attorney, Twelfth Judicial District Sebastian County Courthouse 35 South 6th Street Fort Smith, Arkansas 72901
Dear Mr. DeLay:
I am writing in response to your request for an opinion on the following:
 I am writing you to request your opinion with regard to the legality of certain "quarter machines," which have been placed in various convenience stores within this jurisdiction. Basically, these machines have rows of quarters in them on a ledge that moves forward and back. A person attempts to drop quarters into the machine and on to the back of the moving ledge in an attempt to push the other quarters, or other prizes, into drop chutes near the front where you can recover whatever gets pushed in. The player deposits a quarter in a slot which can be moved from side to side, so as to aim, and there is also a push-button control that changes the timing of the forward and back movement of the ledge. Obviously, if the timing is correct, then individual quarters, as well as rolls of quarters, or rolls of quarters wrapped with $10, $20, or in some cases, $50 bills, may fall into the drop chutes where they can be retrieved as prizes.
 The following questions have arisen:
 1. Are these "quarter machines" to be considered "gaming devices" which are prohibited by Arkansas's Anti-Gambling Statute, A.C.A. § 5-66-101, et seq.? *Page 2 
 2. Even if these devices are not "gaming devices," are they impermissible lotteries, which are prohibited by Article 19, Section 14 of the Arkansas Constitution?
Further correspondence with this office has raised the additional question of whether these devices fall within the so-called "Chuck E. Cheese" law that authorizes amusement devices. I will address the applicability of the amusement device exception to the prohibition on gambling devices in response to Question One.
RESPONSE
The questions you pose are necessarily factual and consequently, not capable of definitive resolution in an attorney general opinion. Assuming the facts you have stated, however, in my opinion the devices violate the prohibition on possession of gambling devices. Furthermore, the so-called "Chuck E. Cheese" law does not shield these devices from the criminal prohibition on gambling devices, assuming cash prizes are awarded and/or the device has an "automatic money payoff mechanism." It is unnecessary to answer your second question in light of my response to Question One. I have, however, set out a general discussion of the applicable law for your convenience below.
Question One: Are these "quarter machines" to be considered "gamingdevices" which are prohibited by Arkansas's Anti-Gambling Statute,A.C.A. § 5-66-101, et seq.?
In my opinion, while I am unable to determine whether the "quarter machines" described in your request would be considered gambling devicesper se, they appear to meet the requirements of gambling devices by actual use. Furthermore, in my opinion, the exemption to the prohibition on gambling devices for amusement devices does not apply to "quarter machines" as described in your request for an opinion.
Initially, it may be helpful to establish the legal definition of "gambling" or "gaming" applicable under Arkansas jurisprudence. As described by one of my predecessor's in Op. Att'y Gen. 2004-357: *Page 3 
 The Arkansas Code does not define the terms "gambling" or "gaming." The Arkansas Supreme Court, however, has defined gambling as "the risking of money between two or more persons, on a contest or chance of any kind, where one must be the loser and the other gainer." Sharp v. State, 350 Ark. 529, 534, 88 S.W.3d 848
(2002) (quoting Portis v. State, 27 Ark. 360 (1872)). Furthermore, the court has treated the two terms as interchangeable. Id.
Statutory Prohibition on Gambling Devices or Gaming Tables
With respect to the prohibition against keeping or exhibiting gambling devices or gaming tables, A.C.A. § 5-66-104 (Repl. 2005) states:
 Every person who shall set up, keep, or exhibit any gaming table or gambling device, commonly called A.B.C., E.O., roulette, rouge et noir, or any faro bank, or any other gaming table or gambling device, or bank of the like or similar kind, or of any other description although not herein named, be the name or denominations what it may, adapted, devised, or designed for the purpose of playing any game of chance, or at which any money or property may be won or lost, shall be deemed guilty of a misdemeanor . . .[.]
Id.[1]
Generally speaking, a "gambling device" and, by extension of the synonymous definition of "gaming" adopted by the court, a "gaming table," is "an invention to determine the question as to who wins and who loses, that risk their money on a contest or chance of any kind."Portis v. State, 27 Ark. 360, 362 (1872). A device may be a prohibited gambling device by being either a per se gambling device or a gambling device by "actual use."
Per se gambling device
If something is a gambling device per se, the "mere possession of it is punishable" under this provision. State v. 26 Gaming Machines,356 Ark. 47, 52, 145 S.W.3d 368 (2004). The court has attempted to define aper se gaming device several *Page 4 
times in the past century. As recounted in 26 Gaming Machines, the court held a machine to be an illegal gaming device because it was "adapted or designed for the purposes of playing any game of chance or at which any money or property may be won or lost" and because it induced the players to spend money on the machine for the chance to play a "symbolic game of baseball" in Rankin v. Mills Novelty Co., 182 Ark. 561, 32 S.W.2d 161
(1930). 26 Gaming Machines, supra. Subsequently, the Court clarified that two slot machines were illegal gaming devices despite one being used partly for amusement because the devices "only reasonable and profitable use . . . was a game of chance" even if there were no prizes awarded.Steed v. State, 189 Ark. 389, 72 S.W.2d 542 (1934). In Sharp v. State, the Arkansas Supreme Court clarified the definition of a "gambling device" as follows:
 To be a prohibited gaming device, the device must be one that is adapted or designed for the purpose of playing a game of chance at which money or property may be won or lost. [Pre-Paid Solutions, Inc. v. City of Little Rock, 343 Ark. 317, 34 S.W.3d 360 (2001) (citation omitted)]. Where the machine is played to win or lose by hazard of chance, it is a gaming device. Pre-Paid Solution, supra [(citation omitted)].
350 Ark. 539, 534, 88 S.W.3d 848 (2002). A per se gaming device is, therefore, a device or invention that is adapted or designed to determine the winner and loser in a game of chance and whose only reasonable and profitable use is to play a game of chance. In 26 Gaming Machines, the court stated that it "has also held that a machine was a gaming deviceper se even where no prize was awarded." 26 Gaming Machines, supra at 52-53 (citing Stanley v. State, 194 Ark. 483, 107 S.W.2d 532 (1937)).
I am unable to determine whether the "quarter machines" referenced in your request are gambling devices per se under A.C.A. § 5-66-104. The Arkansas Courts have examined each device separately to make that determination. The Arkansas Courts have previously determined that certain devices, such as slot machines, Howell v. State, 184 Ark. 109,40 S.W.2d 782 (1931), video poker machines, Sharp, supra, and video slot machines, id., are per se gambling devices under A.C.A. § 5-66-104. With respect to the "quarter machines" referenced in your request, clearly such a machine is a "device or invention" that may "determine the winner and loser" in a contest at which money or property may be won or lost. I am unable to determine whether it consists of a "game of chance" *Page 5 
and whether the "only reasonable and profitable use is to play a game of chance." While the Arkansas Supreme Court has recognized that a machine would be a gambling device if it was one "at which money . . . could be won or lost," Rankin, supra, later court cases referenced the devices as facilitating a "game of chance," Pre-Paid Solutions, Inc., supra. Absent judicial clarification, I am unable to offer a definitive answer to whether a "quarter machine" is a gambling device per se. It is clear, however, that these devices are ones at which money can be won or lost and therefore may fall within the prohibition on gambling devices per se.
Gambling device by actual use
Additionally, the court has recognized that devices adapted and actuallyused for gambling or gaming run afoul of A.C.A. § 5-66-104. 26 GamingMachines, supra; see also Albright v. Muncrief, 206 Ark. 319,176 S.W.2d 426 (1943) (teletype machines were not gambling devices perse but became gambling devices when used for gambling purposes); andState v. Saunders, 86 Ark. 353 (1908) (device need not be intended solely for gambling purposes to fall within the Arkansas prohibitions against gambling or gaming devices). For example, a pinball machine is not a perse gambling device but became a gambling device by actual use because the owner of the game would pay players for each free game won on the machine. Bostic v. City of Little Rock, 241 Ark. 671, 409 S.W.2d 825
(1966). The Arkansas Supreme Court recently reiterated that where the devices in question are not gambling devices per se, there must be evidence presented that the devices in question are actually used for gambling before a violation will be upheld. 26 Gaming Machines, supra. Citing Blankenship v. State, 258 Ark. 535, 527 S.W.2d 636 (1975), the court noted that that a ledger, three sheets of yellow paper with tickets wrapped inside of them, newspapers containing racing forms, a reserve of tickets, telephones, and checks were not gambling devices by use because there was no proof that the owner "ever made a specific bet." Id.
In my opinion, under the facts you describe, even if the machines were not found to be gambling devices per se, it appears that the "quarter machines" would likely be found to be gambling devices by actual use. As noted above, gambling will occur whenever there is the risking of money on the outcome of a contest. Ansley, supra. A "gambling device" can be any invention that is used to determine the winner and loser of a contest where money or something of value is risked. Portis, supra. As described in your request, a "quarter machine" requires money to play. The money is then risked in a contest between the operator of the machine and the owner of the machine. Either the player will lose his or her *Page 6 
investment of the money to the machine, and therefore to the owner, or the player will receive money from the machine. The use of an "invention" to determine the winner of a contest where money is wagered has been sufficient where there is evidence of actual wagering. See 26 GamingMachines, supra; and Bostic, supra. In my opinion, a "quarter machine" as described in your request for an opinion would likely be found to be a gambling device by actual use in Arkansas courts.
Applicability of "Check E. Cheese" Law
The Arkansas Code provides an exemption from the gambling statutes for coin-operated amusement devices; the so-called "Chuck E. Cheese" law. A.C.A. §§ 26-57-401 through-421 (Repl. 1997 Supp. 2007). In pertinent part, A.C.A. § 26-57-402 provides:
 (2)(A) "Any money or property", "other articles", "other valuable things", or "any representative of anything that is esteemed of value", as used in the antigambling statutes, § 5-66-101 et seq., shall not be expanded to include:
 (i) A free amusement feature such as the privilege of playing additional free games if a certain score is made on a pinball table or on any other amusement game described in this section; or
 (ii) Toys, novelties, or representations of value redeemable for those items which are won by the player of a bona fide amusement game or device which rewards players exclusively with merchandise limited to toys, novelties, or representations of value redeemable for those items, which have a wholesale value of not more than ten (10) times the cost charged to play the game or device once or five dollars ($5.00), whichever is less.
Id. (emphasis added).
As described in your request for an opinion and in subsequent correspondence from the operator of the "quarter machines", a player of a "quarter machine" will win actual money. The exception for amusement devices from the prohibition on illegal gambling devices only applies to devices which reward players with "toys, novelties, or representations of value redeemable for those items." See A.C.A. § 26-57-402. The Code further defines "toy and novelty" as follows: *Page 7 
 (4) "Novelty" means an article of trade whose value is chiefly decorative, comic, or the like, and whose appeal is often transitory;
 * * * (6) "Toy" means a small article of little value but prized as a souvenir or for some other special reason, a trinket, a knickknack, or a bauble.
Id.
The statute clearly only allows representations of value won from am amusement device to be redeemed for toys or novelties. The definitions provided above demonstrate that money would not be considered either a "toy" or "novelty" as money is not generally decorative or prized solely for transitory or nostalgic purposes. Furthermore, A.C.A. § 26-57-403
states:
 (a) Nothing contained in this section and §§ 26-57-401, 26-57-402, and 26-57-404 — 26-57-407 shall be deemed to legalize, authorize, license, or permit any machine commonly known as a slot machine, roscoe, or jackpot, or any machine equipped with any automatic money payoff mechanism.
 (b) Any person owning or possessing an amusement device described in § 26-57-402 or any person employed by or acting on behalf of the person, who gives to any other person money for a noncash prize, toy, or novelty received as a reward in playing the amusement device or for free games won on the amusement device shall be guilty of a Class A misdemeanor.
Id. (emphasis added). A lack of a pay-out mechanism or of "hoppers or chutes for monetary winning" demonstrates a likelihood that a device is an amusement device. 26 Gaming Machines, supra at 54. As described in your request and in correspondence from company operating the machines, the "quarter machines" have a chute or hopper in which monetary winnings will be retrieved by a player. In my opinion, the exemption to the gambling prohibition for amusement devices does not apply to "quarter machines" as described in your request for an opinion. *Page 8 
Question Two: Even if these devices are not "gaming devices," are theyimpermissible lotteries, which are prohibited by Article 19, Section 14of the Arkansas Constitution?
It is unnecessary to answer your second question in light of my response to Question One. I will, however, set forth the general legal standards that would be applied.
The prohibition on lotteries in Art. 19, § 14 of the Arkansas Constitution states, "No lottery shall be authorized by the State, nor shall the sale of lottery tickets be allowed." Id. The Arkansas courts have defined a "lottery" as "a species of gaming which may be defined as a scheme for the distribution of prizes by chance among persons who have paid, or agreed to pay, a valuable consideration for the chance to obtain a prize." See Scott v. Dunaway, 228 Ark. 943, 311 S.W.2d 305 (1958); seealso Op. Att'y Gen. 2004-357. As explained in Op. Att'y Gen. 2005-034, this creates a three prong test where the initial question is whether consideration is paid to participate. The second question is whether the game is controlled by chance such that winning is not influenced by the skill or judgment of those participating. The third question is whether a prize is awarded. If any of these questions is answered in the negative, the scheme will not be considered a lottery. Id. (citing Op. Att'y Gen.86-599). As noted by one of my predecessors, "[t]he question of whether any particular game possesses the above-listed elements of a lottery is entirely a question of fact." Op. Att'y Gen. 2004-155.
Assistant Attorney General Joel DiPippa prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] Arkansas Code Annotated § 5-66-103 also prohibits an individual from "setting up, keeping, or exhibiting any gambling device." The discussion of the distinct offense in A.C.A. § 5-66-104 should be read to apply to the similar language found in A.C.A. § 5-66-103.